129 T.C. No. 14


UNITED STATES TAX COURT


JOSEPH GIAMELLI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23150-04L.          Filed October 30, 2007.


        P and his wife filed a joint Federal income tax
return for the 2001 tax year reporting a tax due.  P
failed to pay the amount due with the joint return.  R
accepted the return as filed and assessed the tax
reported therein.  Sec. 6201(a)(1), I.R.C.  R issued to
P a notice of Federal tax lien, and P filed a request
for a collection review hearing pursuant to sec. 6320,
I.R.C.  During the pendency of the collection review
hearing, P and R attempted to negotiate an installment
agreement.  R issued a notice of determination
rejecting the proposed installment agreement when P
failed to make estimated tax payments for later tax
years.  After filing a petition in this Court for
review of R's determination, P was killed in an
automobile accident.  The estate of P now wishes to be
substituted for P and, for the first time on appeal of
R's determination, seeks to raise challenges to P's
underlying liability.

**Held**: R did not abuse his discretion in rejecting the installment agreement when P failed to make estimated tax payments.

**Held**, **further**, the estate of P may not raise the underlying tax liability on appeal of R's determination when the underlying liability was not properly raised during the collection review hearing before R's Appeals Office.

Erasmo S. Bruno, for petitioner.

Marc L. Caine, for respondent.

OPINION

GOEKE, Judge: This case is before the Court for review of a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).[1] Respondent has moved to dismiss for lack of prosecution on the grounds that no party has been substituted for Joseph Giamelli since his death. Alternatively, respondent has moved for summary judgment on the grounds that there is no evidence that the Appeals officer abused her discretion in sustaining the proposed collection action. Because Mrs. Giamelli, as the executrix of Mr. Giamelli's estate, has moved to be substituted as the petitioner in this case, respondent's motion to dismiss for lack of

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

prosecution shall be denied.  Further, because Mrs. Giamelli has failed to present any evidence to create a genuine question of fact whether the Appeals officer abused her discretion sustaining the proposed collection action, respondent's motion for summary judgment shall be granted.

## Background

Joseph Giamelli and his wife, Joann Giamelli, resided in New York at the time this petition was filed.  Mr. and Mrs. Giamelli filed a joint Form 1040, U.S. Individual Income Tax Return, for the 2001 tax year.  While Mr. and Mrs. Giamelli reported a tax due, they did not include payment of the tax due with the return. Respondent then assessed the tax due shown on the return and sent Mr. and Mrs. Giamelli notice and demand for payment.

When Mr. and Mrs. Giamelli failed to pay, respondent issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 listing an unpaid balance of assessment of $723,527.01.  Mr. Giamelli, while represented by counsel, then submitted to respondent Form 12153, Request for a Collection Due Process Hearing, and, according to Mrs. Giamelli, signed her name without her knowledge or permission.

Mr. Giamelli's request for a collection review hearing was assigned to one of respondent's Appeals officers.  Mr. Giamelli informed the Appeals officer that he wished to enter into an installment agreement in which he would pay $14,300 on a monthly

basis to satisfy the 2001 tax liability. During the ensuing months, as Mr. Giamelli and the Appeals officer were discussing the installment agreement, Mr. Giamelli continued to send monthly checks of $14,300 to respondent in partial payment of the 2001 tax liability.

On October 5, 2004, the Appeals officer informed Mr. Giamelli that, under Internal Revenue Service (IRS) guidelines, the installment agreement could not be processed if he was not compliant with his estimated tax payments for tax years after 2001. Mr. Giamelli did not become compliant with his estimated tax payments.

On November 15, 2004, respondent issued to Mr. and Mrs. Giamelli the notice of determination sustaining the proposed collection action for the 2001 tax liability. On December 3, 2004, Mr. Giamelli, without Mrs. Giamelli's knowledge or signature, filed a petition for lien or levy action under section 6320(c). The only issue raised by Mr. Giamelli in his petition was his desire to be allowed to enter into an installment agreement with respondent for the 2001 tax year. After the petition was filed, Mr. Giamelli and respondent agreed to an installment agreement to resolve the outstanding 2001 tax liability, and Mr. Giamelli agreed to sign the necessary decision document to submit to the Court.

In July 2005, before the decision document was executed, Mr. Giamelli was killed in an automobile accident. Subsequently, respondent received a telephone call from Erasmo Bruno, informing respondent of Mr. Giamelli's death and that Mrs. Giamelli had been named the executrix of his estate. Mr. Bruno further informed respondent that he was now counsel for Mrs. Giamelli and the estate and indicated to respondent that Mrs. Giamelli was withdrawing from the installment agreement.

At a hearing before this Court on respondent's motions, Mr. Bruno filed a motion to substitute the Estate of Joseph Giamelli, Deceased, Joann Giamelli, Executrix, as the petitioner in this case. Mr. Bruno represented to the Court that Mrs. Giamelli had received letters to administer her husband's estate. Mr. Bruno further informed the Court that Mrs. Giamelli, in her personal capacity, had no knowledge of the outstanding tax liability and had not authorized or signed the petition filed with this Court by Mr. Giamelli. Accordingly, the Court dismissed the portion of this case relating to Mrs. Giamelli in her personal capacity for lack of jurisdiction.

Mrs. Giamelli, as executrix of the estate, now wishes to disclose certain wrongdoings of her husband that she believes would alter the underlying tax liability for 2001. The estate has suggested to the Court that Mr. Giamelli was involved in a fraudulent scheme whereby certain bribes were paid by Mr.

Giamelli which were not disclosed on the income tax return in order to conceal this illegal activity.  The estate would like to disclose this alleged fraudulent scheme in order to deduct the alleged illegal payments and thereby show that the tax due should be less than originally reported.

Discussion

I.   Motion To Dismiss for Lack of Prosecution

Respondent first moves for dismissal for lack of prosecution because no party has been substituted for Mr. Giamelli since his death in July of 2005.

Under Rule 63(a), "If a petitioner dies, the Court, on motion of a party or the decedent's successor or representative or on its own initiative, may order substitution of the proper parties."  Under Rule 60(c), the capacity of an individual to be substituted is determined by local law.  Under New York law, "A personal representative is a person who has received letters to administer the estate of a decedent."  N.Y. Est. Powers & Trusts Law sec. 1-2.13 (McKinney 1998).

At a hearing before this Court on respondent's motion to dismiss, counsel for Mrs. Giamelli filed a motion to substitute as the petitioner, the Estate of Joseph Giamelli, Deceased, Joann Giamelli, Executrix, in the place of Joseph Giamelli.  Counsel represented to the Court that Mrs. Giamelli had received letters to administer her husband's estate.  While Mrs. Giamelli's motion

did not include a copy of the letters to administer the estate, we are satisfied on counsel's representation that Mrs. Giamelli has been appointed the executrix of her husband's estate and that she wishes to continue with his petition in that capacity.

Accordingly, because we find that Mrs. Giamelli wishes to be substituted for Mr. Giamelli, in her capacity as the executrix of Mr. Giamelli's estate, an appropriate order will be entered amending the caption of this case. Further, respondent's motion to dismiss for lack of prosecution will be denied.

II. Motion for Summary Judgment

Respondent has also filed a motion for summary judgment pursuant to Rule 121(a). Respondent argues for summary judgment on the grounds that the Appeals officer properly exercised her discretion in rejecting the proposed installment agreement and sustaining the proposed collection action because Mr. Giamelli was not in compliance with his current tax obligations.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted where there is no genuine issue of any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that there is no genuine issue of

material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985).

This collection review proceeding was filed pursuant to section 6320, which provides for Tax Court review of respondent's administrative determinations to proceed with the collection of tax liabilities via liens. Where the validity of the underlying tax liability is at issue in a collection review proceeding, the Court will review the matter de novo. Davis v. Commissioner, 115 T.C. 35, 39 (2000). However, where the underlying liability is not at issue, we review the Appeals officer's determinations regarding the collection action for an abuse of discretion. Goza v. Commissioner, 114 T.C. 176 (2000). Mr. Giamelli did not challenge the validity of the underlying tax liability, and thus this Court would pursuant to precedent review respondent's administrative determinations for abuse of discretion; that is, whether the determinations were arbitrary, capricious, or without sound basis in fact or law. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Internal Revenue Service guidelines require a taxpayer to be current with filing and payment requirements to qualify for an installment agreement. 2 Administration, Internal Revenue Manual (CCH), sec. 5.14.1.2(9)(e), at 17,504. The Appeals officer, in reliance on the IRS guidelines, rejected Mr. Giamelli's proposed

installment agreement because he was not in compliance with his estimated tax payments for tax years after 2001. Reliance on a failure to pay current taxes in rejecting a collection alternative does not constitute an abuse of discretion. See Orum v. Commissioner, 123 T.C. 1, 4, 13 (2004), affd. 412 F.3d 819 (7th Cir. 2005).

The estate has not presented any evidence to suggest the Appeals officer abused her discretion in rejecting Mr. Giamelli's proposed installment agreement. Accordingly, without any evidence to the contrary, we find that respondent's Appeals Office did not abuse its discretion in sustaining the proposed collection action based on the record before it.

We now turn to arguments raised by the estate's new counsel for the first time after Mr. Giamelli's death.[2] The estate now argues that Mr. Giamelli overstated his income tax liability in an effort to conceal fraudulent business dealings, and that consequently the estate is only a partial successor in interest to Mr. Giamelli. The estate reasons that because the estate has an interest in conflict with Mr. Giamelli, it should be allowed

---

[2]The estate's new arguments were not raised in the petition by the former counsel for Mr. Giamelli. Accordingly, were this case to survive summary judgment, the estate would be required to seek leave to amend the petition. By informal agreement, the parties have argued respondent's motion for summary judgment presuming the estate would be permitted to raise these new arguments, and respondent argues for summary judgment even if these new arguments were accepted as true.

to challenge the underlying liability.  Alternatively, the estate asserts that it is a separate person entitled to its own collection review proceeding.

The estate's arguments imply that we may consider arguments about the underlying tax liability never raised before in the administrative collection review proceedings.  This Court's jurisdiction in a collection review proceeding under sections 6320 and 6330 is dependent on the issuance of a valid notice of determination by respondent's Appeals Office and the timely filing of a petition for review.  Sec. 6330(d); see also Smith v. Commissioner, 124 T.C. 36, 38 (2005).  The focus of any review in this Court under section 6330(d) is the determination of respondent's Appeals Office under section 6330(c).  Offiler v. Commissioner, 114 T.C. 492, 498 (2000).

Under section 6330(c)(3), the determination of the Appeals officer shall take into consideration "the issues raised under paragraph (2)".[3]  Section 6330(c)(2)(A) permits the taxpayer to

---

[3] Sec. 6330(c)(2) provides as follows:

(2) Issues at hearing.--

    (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--

        (i) appropriate spousal defenses;

        (ii) challenges to the appropriateness of

(continued...)

"raise at the hearing any relevant issue relating to the unpaid tax" or the proposed collection action.  Section 6330(c)(2)(B) permits a taxpayer to "raise at the hearing challenges to the existence or amount of the underlying tax liability" under certain circumstances.  The statute contemplates consideration of issues "raised" by the taxpayer at the hearing.  Thus, if an issue is never raised at the hearing, it cannot be a part of the Appeals officer's determination.

Respondent's interpretive regulation addressing the scope of an appeal to the Tax Court of a determination by an Appeals officer is consistent with this statutory language.  Sec. 301.6320-1(f)(2), Q&A-F5, Proced. & Admin. Regs.[4] ("In seeking

---

[3](...continued)
  collection actions; and

   (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

   (B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

[4]The revised regulations, effective Nov. 16, 2006, now state: "In seeking Tax Court review of a Notice of Determination, the taxpayer can only ask the court to consider an issue, including a challenge to the underlying liability, that was properly raised in the taxpayer's CDP hearing." Sec. 301.6320-
(continued...)

Tax Court * * * review of Appeals' Notice of Determination, the taxpayer can only request that the court consider an issue that was raised in the taxpayer's CDP hearing.").

While we think the statute is clear, the legislative history of sections 6320 and 6330 further confirms our reading.

Judicial review

> The conferees expect the appeals officer will prepare a written determination addressing the issues presented by the taxpayer and considered at the hearing.  The determination of the appeals officer may be appealed to Tax Court * * * Where the validity of the tax liability was properly at issue in the hearing, and where the determination with regard to the tax liability is a part of the appeal, no levy may take place during the pendency of the appeal. The amount of the tax liability will in such cases be reviewed by the appropriate court on a de novo basis. * * *

H. Conf. Rept. 105-599, at 266 (1998), 1998-3 C.B. 747, 1020. The history further states: "It is the responsibility of the taxpayer to raise all relevant issues at the time of the pre-levy hearing."  Id.  While the conferees' description of a tax liability which was "properly at issue" could be read as broader than matters actually raised with the Appeals officer, the statutory language and conferees also anticipate Tax Court review of a "determination" regarding the tax liability.  Sec. 6330(d)(1); H. Conf. Rept. 105-599, supra at 266, 1998-3 C.B. at

_____

⁴(...continued)
1(f)(2), Q&A-F3, Proced. & Admin. Regs.

1020.  If the tax liability is not raised with the Appeals officer, the determination would not have addressed it.

The statute and regulation make clear that in this context we do not enjoy the same discretion as the Courts of Appeals to consider issues raised for the first time on appeal.  Compare sec. 6330(d) and sec. 301.6320-1(f)(2), Q&A-F5, Proced. & Admin. Regs., with, e.g., Sniado v. Bank Austria AG, 378 F.3d 210, 213 (2d Cir. 2004) (recognizing a Court of Appeals' discretion to entertain arguments raised for the first time on appeal). Accordingly, we shall not review an underlying liability when raised for the first time on appeal of a notice of determination.[5]

We note that our jurisdiction pursuant to section 6330(d) differs from our jurisdiction under section 6213(a).  In deficiency cases, taxpayers may raise any issue regarding their tax liability for the period in question regardless of their prior communication of such issues to the Commissioner.  Our statutory role in such cases is "for a redetermination of [a] deficiency" and "to determine the amount of [an] overpayment".

---

[5]We do not address here the question of whether a taxpayer, having raised one issue with respect to his or her underlying liability in a collection review hearing, may then raise new and different issues with respect to the underlying liability for the first time on appeal of respondent's determination before this Court.  In this case, Mr. Giamelli did not raise any questions with respect to his underlying liability and the Appeals officer did not consider the underlying liability in making her determination.

Secs. 6213(a), 6512(b).[6]  In contrast, issues under section 6330 must have been raised properly when the Appeals officer made her determination before we can review those issues in the context of an appeal of that determination.

The benefit of encouraging taxpayers to raise liability questions first with the Appeals officer provides further support for the approach in the regulation.  Allowing the tax liability to be raised initially only after the case has been petitioned to this Court would eliminate the Appeals officer's role and permit liability issues to be litigated without any prior consideration by any level of respondent's organization.  Liability issues are likely to arise under section 6330 based on requests for reconsideration of taxes previously reported on a return.  The judicial consideration of such liabilities without some prior review by the Commissioner would frustrate the administrative review process created by section 6330.

This, of course, is not the first time we have addressed the scope or our review of respondent's collection determinations. See Bruce v. Commissioner, T.C. Memo. 2007-161; Bourbeau v. Commissioner, T.C. Memo. 2003-117; Tabak v. Commissioner, T.C. Memo. 2003-4; Miller v. Commissioner, 115 T.C. 582, 589 n.2

---

[6]In Greene-Thapedi v. Commissioner, 126 T.C. 1, 8-13 (2006), we held that our jurisdiction under sec. 6330(d)(1) is more limited than in the deficiency context and does not include the authority to determine an overpayment or to order a refund.

(2000), affd. 21 Fed. Appx. 160 (4th Cir. 2001).  Previously, we have left the door open to the possibility that we might consider issues not raised in the administrative hearing.  See Magana v. Commissioner, 118 T.C. 488, 493 (2002) ("generally it would be anomalous and improper for us to conclude that respondent's Appeals Office abused its discretion under section 6330(c)(3) in failing to grant relief, or in failing to consider arguments, issues, or other matter not raised by taxpayers or not otherwise brought to the attention of respondent's Appeals Office" (emphasis added)).  We hold today that we do not have authority to consider section 6330(c)(2) issues that were not raised before the Appeals Office.[7]

Thus, while the estate now disagrees with the income tax returns, this has no bearing on the limited decision before this Court.  Mr. Giamelli submitted a Form 12153, Request for a Collection Due Process Hearing, to respondent.  The only issue raised by Mr. Giamelli in the subsequent hearing with respondent's Appeals officer was his desire to enter into an installment agreement to satisfy the 2001 tax liability.  Mr. Giamelli, while represented by counsel, did not challenge the underlying liability and the Appeals officer did not consider it.

---

[7]This case does not involve an issue regarding the accuracy or completeness of the administrative record.  See Murphy v. Commissioner, 125 T.C. 301, 311 (2005), affd. 469 F.3d 27 (1st Cir. 2006).

When Mr. Giamelli failed to become compliant with his estimated tax obligations, the Appeals officer issued a notice of determination rejecting the proposed installment agreement and sustaining respondent's collection action.

Because the only issue raised with the Appeals officer was the installment agreement, our review is limited to the determination reached by the Appeals officer to reject the proposed installment agreement because of Mr. Giamelli's noncompliance. The argument that an estate is a separate person and is entitled to its own collection review hearing fails for the same reason. While the estate has cited no authority for this novel argument, and we know of none, such an argument is not timely. As discussed above, our review is limited to the determination issued by respondent's Appeals Office. The estate has presented no evidence to suggest that the Appeals officer abused her discretion, on the facts as they were presented to her by Mr. Giamelli, when she declined to enter into an installment agreement with Mr. Giamelli.

Accordingly, without any evidence to create a question of fact whether respondent's Appeals Office abused its discretion, respondent's motion for summary judgment will be granted.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.

Reviewed by the Court.

COHEN, HALPERN, CHIECHI, FOLEY, THORNTON, HAINES, KROUPA, and HOLMES, <u>JJ</u>., agree with this majority opinion.

WHERRY, J., concurring:  The majority opinion does not expressly overrule Magana v. Commission, 118 T.C. 488 (2002), a choice of action with which I agree.  The instant case and Magana raise different issues.  This case is a question of jurisdiction to consider a new issue (underlying tax liability, which was not raised at the Appeals Office level) under section 6330(c)(2)(B).  Magana was a question of whether to consider a new matter (hardship, which was not raised at the Appeals Office level) in an abuse of discretion case under section 6330(d)(1).  There is no discretion, much less an abuse of discretion, in deciding whether we have jurisdiction over a section 6330(c)(2)(B) matter.  Either we have jurisdiction to consider the issue, or we do not.  Given this difference, and the potential issue of an Appeals Office hearing record's accuracy, I believe there are at least two circumstances where the rule in Magana (potentially permitting the consideration of arguments, issues, or other matters, which the record indicates were not brought to the Appeals Office's attention before the determination letter was sent) may continue to apply.

First, in my view, the "record" in a section 6320 and/or section 6330 case is not sacrosanct.  Initially, it is prepared by respondent as a part of the stipulation of facts, or on occasion as an exhibit to the answer, or a motion for summary judgment, which document is then filed with the Court and then

incorporated by the clerk's office in the Court's case record. Respondent now prepares the record presumably in accordance with section 301.6330-1(f), Q&A-F4, Proced. & Admin. Regs., which clarified Office of Chief Counsel Notice CC-2006-019 (Aug. 18, 2006). That Office of Chief Counsel Notice had incorporated and superseded Office of Chief Counsel Notice CC-2006-008 (Dec. 27, 2005), and updated and replaced Office of Chief Counsel Notice CC-2003-016 (May 29, 2003). Errors in the record will inevitably occur from time to time, given the large number of records, their complexity, and the number of people participating in the various stages of the collection due process (CDP) procedures.

Where the accuracy of the administrative record is challenged by a party, it is ultimately up to the Court to determine the accuracy and completeness of the administrative record.[1] To make this determination the Court may hold an evidentiary hearing to explore and document whether relevant material below was excluded from the record and/or the record was inappropriately augmented after the Appeals Office hearing and

---

[1] Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985); Franklin Sav. Association v. Dir., Office of Thrift Supervision, 934 F.2d 1127, 1137 (10th Cir. 1991); Thompson v. U.S. Dept. of Labor, 885 F.2d 551, 555-556 (9th Cir. 1989); Murphy v. Commissioner, 125 T.C. 301, 311 (2005), affd. 469 F.3d 27 (1st Cir. 2006); ITT Fed. Servs. Corp. v. United States, 45 Fed. Cl. 174, 185 (1999); O'Toole v. U.S. Secy. of Agric.; 471 F. Supp. 2d 1323, 1328-1329 (Ct. Intl. Trade 2007).

the issuance of the determination letter.  The majority opinion does not disagree with this conclusion.  See majority op. n.7.

Second, Appeals Office hearings are informal.  See Katz v. Commissioner, 115 T.C. 329, 337 (2000); Davis v. Commissioner, 115 T.C. 35, 41 (2000); sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.  There exists no right to subpoena witnesses or documents in connection with a section 6330 Appeals Office hearing.  See Roberts v. Commissioner, 118 T.C. 365, 372 (2002) affd. 329 F.3d 1224 (11th Cir. 2003); Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002); Davis v. Commissioner, supra at 41-42; sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.

While taxpayers must raise all pertinent issues at the Appeals Office hearing and make a timely good faith effort to produce evidence in support of those issues, they may be unable to provide sufficient evidence to convince a skeptical Appeals Office employee.  This is particularly true where the supporting evidence includes the testimony or documents of uncooperative third parties.  In such circumstances the taxpayer may seek to provide additional evidence at the section 6330(d)(1) trial utilizing the Tax Court's Rule 147 subpoena power or the threat thereof.  In such cases, in determining whether the Appeals Office abused its discretion, the taking of additional evidence at trial with respect to a previously raised issue may be appropriate.  Robinette v. Commissioner, 123 T.C. 85, 95 (2004),

revd. 439 F.3d 455 (8th Cir. 2006).

Congress enacted section 6330 as a part of remedial legislation, the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685, to ensure taxpayer rights against alleged Internal Revenue Service mistreatment by affording taxpayers "formal procedures designed to ensure due process where the IRS seeks to collect taxes by levy (including by seizure)."  S. Rept. 105-174, at 67 (1998), 1998-3 C.B. 537, 603.  Because I believe that due process in formal judicial actions may need to include the right to call witnesses where that right was not previously afforded and facts are in dispute, I continue to believe that Robinette was correctly decided.

HAINES, J., agrees with this concurring opinion.

SWIFT, J., respectfully dissenting.  In the past 7-plus years, we have dealt with new issues raised in collection cases efficiently and summarily (generally via summary judgment), and we have done so without limiting our authority or our jurisdiction.  The door that Magana v. Commissioner, 118 T.C. 488, 493-494 (2002), left only slightly open for issues involving unusual situations and spousal defenses has not in any way impeded our summary disposition post Magana of a large majority of collection cases.  Indeed, it is estimated that approximately 8 out of 10 collection cases already are disposed of by this Court via summary proceedings.

The Magana rule that section 6330(c)(2) issues not raised with respondent's Appeals Office generally will not be considered by this Court was based on a judicially crafted standard of review (namely, abuse of discretion) and on the simple logic that Appeals Office discretion could not have been involved (let alone an abuse of that discretion) where an issue was not raised at the Appeals Office collection hearing.  This abuse of discretion standard of review is not set forth in the statutory language of section 6320 or 6330.  Rather this standard of review is based on one sentence in the legislative history.[1]

---

[1] In Sego v. Commissioner, 114 T.C. 604, 609-610 (2000), and Goza v. Commissioner, 114 T.C. 176, 181-182 (2000), in first adopting the abuse of discretion standard, we relied on H. Conf. Rept. 105-599, at 266 (1998), 1993-3 C.B. 747, 1020, which

(continued...)

The Treasury regulations on which the majority opinion relies do not speak in terms of our authority or jurisdiction, and the Commissioner by regulation cannot add to or restrict our authority or our jurisdiction.

No appellate court or other Federal trial court has criticized our Magana opinion, and neither party in this case expressly asks us to overrule or to modify Magana.

The Tax Court has been given a mandate from Congress, indeed recently an exclusive one,[2] to review respondent's collection procedures. We have taken this mandate seriously and, where the occasion has demanded it, either put a stop to the collection

---

[1](...continued)
provided as follows:

> The conferees expect the appeals officer will prepare a written determination addressing the issues presented by the taxpayer and considered at the hearing. * * * Where the validity of the tax liability was properly at issue in the hearing, and where the determination with regard to the tax liability is part of the appeal, no levy may take place during the pendency of the appeal. The amount of the tax liability will in such cases be reviewed by the appropriate court on a de novo basis. Where the validity of the tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the appeals officer for abuse of discretion. * * *

[2] Sec. 6330(d)(1) was amended by the Pension Protection Act of 2006, Pub. L. 109-280, sec. 855(a) and (b), 120 Stat. 1019, to give this Court exclusive jurisdiction to hear appeals from respondent's Appeals Office notices of determination in collection matters issued after Oct. 16, 2006.

process altogether or remanded the matter for further review by respondent's Appeals Office. By its reading of section 301.6320-1(f)(2), Q&A-F5, Proced. & Admin. Regs., the majority opinion effectively places on us a jurisdictional restriction (i.e., that we have no authority to consider an issue unless the issue was first raised during the Appeals Office collection hearing).

We must be reminded of what we said in Minahan v. Commissioner, 88 T.C. 492, 505 (1987): "When the regulation interpreting a statute is written by the very agency whose 'abusive actions or overreaching' were intended to be deterred by that statute, we must be especially vigilant to insure that the regulation 'harmonizes with the plain language of the statute, its origins, and its purpose.'"

The majority's interpretation of the statutory provisions and of respondent's regulations is particularly unfortunate here where it is clear that we would have "de novo" review over the "matter" that the estate now seeks to raise (namely, the underlying tax liability).

Emphasis on the word "matter" is appropriate because that is what the statute governing our jurisdiction says. Section 6330(d)(1)(A) provides as follows:

> SEC. 6330(d). Proceeding After Hearing.--
>
> (1) Judicial review of determination.--The person may, within 30 days of a determination under this section, appeal such determination--

(A) to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)[emphasis supplied] * * *.

Although titled "Judicial review of determination" the statutory language in subparagraph (A) that grants our jurisdiction uses the word "matter", not "determination". If Congress intended to limit our authority or our jurisdiction to issues raised in the Appeals Office hearing or contained in the notice of determination, Congress certainly could have said that. But Congress did not--it granted us jurisdiction over the "matter", clearly a broader term.

Indeed, a broader interpretation is consistent with the legislative history. The legislative history states that where the underlying tax liability is properly at issue the reviewing court shall proceed on a de novo basis, and the legislative history does not preclude review de novo of the underlying tax liability where it was not raised at the Appeals Office hearing. Thus, as to issues to be reviewed de novo, the paragraph of the legislative history cited in the majority opinion is inclusive, not exclusive.

The Court's authority or jurisdiction over issues to be reviewed de novo should not be limited to issues raised at the Appeals Office hearing. For example, our review of a net operating loss (NOL) carryback that arises after a collection Appeals Office hearing should not be precluded on the basis of

our lack of authority or jurisdiction.  In the context of deficiency cases, the Court often has continued a case in order to allow respondent to audit an NOL carryback that did not arise until after the petition was filed.

The majority opinion could be read to raise a serious question as to our authority or jurisdiction to remand any case for further Appeals Office hearing on an issue that has not been raised at the initial Appeals hearing, in spite of the fact that, in some of our collection cases, respondent's Appeals Office appears to have made a determination where there was no hearing at all.  See, e.g., <u>Lunsford v. Commissioner</u>, 117 T.C. 183 (2001).

<u>Magana v. Commissioner</u>, 118 T.C. 488 (2002), prudently left open the possibility that we might consider issues not raised at Appeals because unusual situations may arise where it would make little sense not to consider such issues.

The majority opinion, p. 13, states:

> We note that our jurisdiction pursuant to section 6330(d) differs from our jurisdiction under section 6213(a).

This and other courts have been heading in this direction for some time now--distinguishing section 6320 and section 6330 proceedings from deficiency proceedings--and it calls into question some of our early decisions that described how sections

6320 and 6330 operate.  Our early caselaw regarding sections 6320
and 6330 was based on similarities to tax deficiency proceedings,
not on differences.  For example, in <u>Davis v. Commissioner</u>, 115
T.C. 35, 41-42 (2000), we concluded that Appeals Office
collection hearings under sections 6320 and 6330 should be
handled in the same manner that traditional Appeals Office
hearings involving tax deficiencies have been handled, as
follows:

> Hearings at the Appeals level have historically
> been conducted in an informal setting.  [Citing sec.
> 601.106(c), Statement of Procedural Rules.]
>
> *     *     *     *     *     *     *
>
> When Congress enacted section 6330 and required
> that taxpayers be given an opportunity to seek a
> pre-levy hearing with Appeals, Congress was fully aware
> of the existing nature and function of Appeals.
> Nothing in section 6330 or the legislative history
> suggests that Congress intended to alter the nature of
> an Appeals hearing so as to compel the attendance or
> examination of witnesses.  When it enacted section
> 6330, Congress did not provide either Appeals or
> taxpayers with statutory authority to subpoena
> witnesses.  The references in section 6330 to a hearing
> by Appeals indicate that Congress contemplated the type
> of informal administrative Appeals hearing that has
> been historically conducted by Appeals and prescribed
> by section 601.106(c), Statement of Procedural Rules.
> The nature of the administrative Appeals process does
> not include the taking of testimony under oath or the
> compulsory attendance of witnesses.  We therefore hold
> that a hearing before Appeals pursuant to section 6330
> does not include the right to subpoena witnesses.
> [Citations and fn. ref. omitted.]

 The regulation on which the majority opinion relies under
section 6320 is identical to the regulation under section 6330,

and one might argue that the majority's holding herein applies equally to section 6330 levy cases.[3]  Our concerns regarding the majority opinion are even more obvious in the context of section 6330 collection cases.

_____

[3] Sec. 301.6320-1(f)(2), Q&A-F5 and sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs., in effect for the year in issue in the instant case, contain identical language, as follows:

> Q-F5. What issue or issues may the taxpayer raise before the Tax Court or before a district court if the taxpayer disagrees with the Notice of Determination?

> A-F5. In seeking Tax Court or district court review of Appeals' Notice of Determination, the taxpayer can only request that the court consider an issue that was raised in the taxpayer's CDP hearing.

Consistent with the Pension Protection Act of 2006, Pub. L. 109-280, sec. 855(a), 120 Stat. 1019, giving the Tax Court exclusive jurisdiction over both sec. 6320 and sec. 6330 collection cases, the above regulations have been updated and the language of former Q&A-F5 has been moved to Q&A-F3.  Current sec. 301.6320-1(f)(2), Q&A-F3 and sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs., contain identical language, as follows:

> Q-F3. What issue or issues may the taxpayer raise before the Tax Court if the taxpayer disagrees with the Notice of Determination?

> A-F3. In seeking Tax Court review of a Notice of Determination, the taxpayer can only ask the court to consider an issue, including a challenge to the underlying tax liability, that was properly raised in the taxpayer's CDP hearing.  An issue is not properly raised if the taxpayer fails to request consideration of the issue by Appeals, or if consideration is requested but the taxpayer fails to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to present such evidence.

Spousal defenses are specifically mentioned in section 6330(c)(2)(A)(i) as issues that can be raised in both section 6320 lien and section 6330 levy cases. Assume that a petitioner in a section 6330 levy case failed to raise a spousal defense before Appeals but now wishes to raise a spousal defense in the section 6330 Tax Court proceeding. The majority opinion would deny our authority in the section 6330 case to consider the spousal defense.

However, section 6015 would allow the petitioner to file an election for spousal relief under section 6015.[4] Once the section 6015 election is filed, the restriction on respondent's collection action imposed by section 6015(e)(1)(B) would go into effect. Section 6015(e) provides in part as follows:

> SEC. 6015(e). Petition for Review by Tax Court.--
>
> (1) In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, or in the case of an individual who requests equitable relief under subsection (f)--
>
> \* \* \* \* \* \* \*
>
> (B) Restrictions applicable to collection of assessment.--

---

[4] The election can be made not later than 2 years after respondent has begun collection activity. Sec. 6015(b)(1)(E), (c)(3)(B). A notice of intent to levy is considered the initiation of a collection activity. Sec. 1.6015-5(b), Income Tax Regs.

> (i) In general.--Except as otherwise provided in section 6851 or 6861, no levy or proceeding in court shall be made, begun, or prosecuted against the individual making an election under subsection (b) or (c) or requesting equitable relief under subsection (f) for collection of any assessment to which such election or request relates until the close of the 90th day referred to in subparagraph (A)(ii), or, if a petition has been filed with the Tax Court under subparagraph (A), until the decision of the Tax Court has become final. * * *

The above provision would prohibit any levy until the section 6015 election is finally resolved. Thus, any final decision in the section 6330 case allowing the levy to proceed would be unenforceable against the electing spouse until the section 6015 matter was resolved. This probably would be reason to stay the section 6330 case pending outcome of the section 6015 matter. However, if the section 6330 case were not stayed and we entered a decision authorizing the levy action, the levy still would be prohibited until resolution of the section 6015 election. See sec. 6015(e)(1)(B)(i). Indeed, the section 6015 election might eventually result in a separate section 6015(e) stand-alone case before us, and we might be called upon to enjoin levy action that we previously authorized in the section 6330 case.[5] Does this make any sense?

---

[5] The Court's authority to enjoin a levy is provided in sec. 6015(e)(1)(B)(ii).

The advantage of the ruling in Magana v. Commissioner, 118 T.C. 488 (2002), is that it gives us the latitude to deal with unusual situations as they arise rather than follow a wooden rule that may produce undesirable results.

Lastly, the statutory language of section 6330(d)(2)(B) refers to a "change in circumstances" and makes it clear that, certainly in the context of a levy case, a change in a taxpayer's circumstances may affect an Appeals Office determination and may justify a result different from that reached in the initial Appeals Office determination.

The facts before us in this case involve a significant change in circumstances (i.e., a taxpayer has died and has been replaced as the party in interest by the decedent's estate, which did not exist at the time of the initial Appeals Office hearing and which therefore could not have been present and could not have raised any issue at the hearing).

The majority's holding that we have no authority or jurisdiction even to consider whether the taxpayer's death might be covered by the exception preserved in Magana v. Commissioner, supra at 494, for "unusual illness or hardship, or other special circumstance" handcuffs this Court from considering and reviewing a change in a taxpayer's circumstance, even though the change of circumstance has occurred after the Appeals Office hearing is final and while the case is pending before us.

The majority opinion may force this Court, in such a situation, to proceed--without any ability to remand the case to respondent's Appeals Office--and to decide a case based on issues and facts raised in the initial Appeals Office hearing and in complete disregard of the significant change in circumstances. What, for example, if while involved in a pending collection case a taxpayer wins a lottery?  Would respondent expect us in deciding the case--perhaps deciding whether to approve an installment agreement or an offer in compromise--to ignore the taxpayer's change in financial condition?

I believe it to be unnecessary, inappropriate, and erroneous for us to base our holding herein on lack of authority or jurisdiction and to eliminate the special circumstances exception of Magana v. Commissioner, supra.

COLVIN, WELLS, LARO, and VASQUEZ, JJ., agree with this dissenting opinion.

VASQUEZ, J., dissenting:  As pointed out by Judge Swift, in Davis v. Commissioner, 115 T.C. 35, 41-42 (2000), we created the informal setting and procedures for section 6330 hearings. Subsequent jurisprudence has rendered the holding of Davis obsolete and has eviscerated the Court's section 6330 review function.  The current state of section 6330 jurisprudence leaves us with two equally unpalatable choices:  (1) Overrule Davis and require the IRS to conduct more formal hearings in order to create a record sufficient for the Court to fulfill our review function, or (2) steadily become more handcuffed and less able to meaningfully review section 6330 cases.  I believe either of these eventualities is contrary to the purpose of section 6330.

After a year of intensive work, 12 days of public hearings, three field hearings, and hundreds of hours in private sessions with public and private sector experts, academics, and citizens' groups, the Report of the National Commission on Restructuring the Internal Revenue Service:  A Vision for a New IRS (IRS Restructuring Report), at v-vi, 43, 67 (1997), concluded that the IRS needed to be more accountable, and that a significant part of improving the system would be taxpayers' ability to seek redress or review of IRS actions in the courts expeditiously.  The IRS Restructuring Report was the foundation for the Internal Revenue

Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, 112 Stat. 685.[1]

During the hearings and deliberations over RRA 1998, many members of Congress spoke of an agency "out of control" and the need for a system of "checks and balances" to oversee the IRS so that the IRS was not acting as "judge and jury" and to ensure the IRS was not abusing taxpayers' rights.[2]  A witness from the U.S. General Accounting Office (GAO) stated that although the IRS believed that it had adequate checks and balances in place to identify misuse of collection actions, the GAO did not believe adequate checks and balances were in place.[3]

_____

[1]  144 Cong. Rec. S4400 (daily ed. May 6, 1998); S4521 (daily ed. May 7, 1998); 144 Cong. Rec. H5354 (daily ed. June 25, 1998).

[2]  Practices and Procedures of the Internal Revenue Service: Hearings Before the S. Comm. on Finance, 105th Cong., 1st Sess. 16, 135, 195, 221, 223, 231 (1997) (S. Hrg. 105-190, First Hearing); 143 Cong. Rec. S9992-S9993 (daily ed. Sept. 26, 1997), S11584-S11591, S11594 (daily ed. Nov. 3, 1997); 143 Cong. Rec. H10004, H10024, H10042 (daily ed. Nov. 5, 1997); IRS Restructuring:  Hearings on H.R. 2676 Before the S. Comm. on Finance, 105th Cong., 2d Sess. 7 (1998) (S. Hrg. 105-529, IRS Restructuring Hearings); IRS Oversight:  Hearings Before the S. Comm. on Finance, 105th Cong., 2d Sess. 165, 169, 211, 243 (1998) (S. Hrg. 105-598, IRS Oversight Hearings); 144 Cong. Rec. S4028, S4031 (daily ed. May 1, 1998), S4184, S4191 (daily ed. May 4, 1998), S4407, S4415 (daily ed. May 6, 1998), S4472, S4478, S4490, S4495, S4499 (daily ed. May 7, 1998), S7629 (daily ed. Sept. 14, 1998), S7718 (daily ed. Sept. 15, 1998); 144 Cong. Rec. H5359 (daily ed. June 25, 1998).

[3]  S. Hrg. 105-190, First Hearing, at 236, 334-335, 338. The U.S. General Accounting Office is now called the U.S. Government Accountability Office.  See Qwest Commcns. Intl. Inc.
(continued...)

Senators heard from the former historian of the IRS, the GAO, and the Acting Commissioner that the IRS did not maintain adequate or any records regarding their collection activities.[4] The witness from the GAO further noted that the collection case files were often incomplete or inaccurate.[5] The Acting Commissioner even admitted that "there have been records management problems".[6]

Witnesses, including former Commissioners, both in their own statements and in response to questions by Senators, agreed that judicial review of collection actions was necessary, and specifically recommended the Tax Court as the forum to provide checks and balances (by allowing taxpayers to appeal IRS collection actions to the Tax Court).[7] Congressmen and Senators also stated that review of collection actions needed to be done,

---

[3](...continued)
v. FCC, 398 F.3d 1222, 1230 n.3 (10th Cir. 2005); S.K.J. & Associates, Inc. v. United States, 67 Fed. Cl. 218, 219 (2005).

[4] S. Hrg. 105-190, First Hearing, at 35, 45, 216, 245-246, 259, 334-338.

[5] S. Hrg. 105-190, First Hearing, at 246, 251, 337.

[6] S. Hrg. 105-190, First Hearing, at 282.

[7] S. Hrg. 105-190, First Hearing, at 40-41, 46-47, 58-59, 69; S. Hrg. 105-529, IRS Restructuring Hearings, at 74, 100-102, 126, 136, 224, 254, 281, 351, 374-376, 386.

expeditiously, by an independent judge that is not part of the IRS, and decided on the Tax Court as the forum.[8]

Although some Senators wanted to pass H.R. 2676, 105th Cong., 1st Sess., the Internal Revenue Service Restructuring and Reform Act of 1997 (H.R. 2676), as quickly as possible, H.R. 2676 did not contain any provision similar to sections 6320 and 6330.[9] Senator Roth, chairman of the Senate Finance Committee and the Senator presiding over hearings to reform the IRS, and other Senators felt that Congress should not rush to pass IRS reform legislation, and one issue that needed to be further addressed was "Insuring that all taxpayers have due process and that the IRS does not abusively use its liens and seizures authority".[10] During the Senate hearings, Senator Gramm stated that "before somebody's home or somebody's business can be taken by the IRS, that they get their day in court to make their case, where they

---

[8] S. Hrg. 105-190, First Hearing, 232; 143 Cong. Rec. S9992-S9993 (daily ed. Sept. 26, 1997); 143 Cong. Rec. H10031 (daily ed. Nov. 5, 1997); S. Hrg. 105-529, IRS Restructuring Hearings, at 7, 12, 43-44, 51, 75; 144 Cong. Rec. S4031 (daily ed. May 1, 1998), S4184, S4191 (daily ed. May 4, 1998), S4490, S4494, S4508 (daily ed. May 7, 1998).

[9] 143 Cong. Rec. H10006-10022 (daily ed. Nov. 9, 1997); 144 Cong. Rec. S4508 (daily ed. May 7, 1998); H. Conf. Rept. 105-599, at 263 (1998), 1998-3 C.B. 747, 1017.

[10] 143 Cong. Rec. S11913-S11914 (daily ed. Nov. 7, 1998), S12100 (daily ed. Nov. 8, 1998); S. Hrg. 105-529, IRS Restructuring Hearings, at 7, 16.

are heard, where an independent judgment is rendered."[11]  Senator

Nickles also stated:

> Some people were saying, well, let us just pass the
> House bill.  We can pass that unanimously and it can be
> signed into law by the bill.  But we are adding a
> provision that came out in Oklahoma, and also the
> hearings here, that a taxpayer would be given the
> opportunity for a court hearing before liens, levies,
> or seizures of his assets.  That is a very important
> provision.  It was not in the House bill, but is in the
> Senate bill.  [S. Hrg. 105-598, IRS Oversight Hearings,
> at 10.]

Congress knew that proceedings in Tax Court would be

conducted de novo.  In response to a question from Senator Roth

("what can be done to protect the taxpayers' legitimate

interest?"), Michael Saltzman--an attorney with 33 years of

experience, a professor of taxation, and author of a treatise on

IRS practice and procedure--responded that the Tax Court "has

ruled and has for years stated that what happens in the Tax Court

is a de novo proceeding".[12]  (Emphasis added.)

_____

[11]  S. Hrg. 105-529, IRS Restructuring Hearings, at 7.

[12]  S. Hrg. 105-529, IRS Restructuring Hearings, at 126,
132, 133.  As Judges Halpern and Holmes aptly wrote:  "it is
important to distinguish between two concepts--'scope of review'
and 'standard of review'--that delimit judicial review of agency
action." Ewing v. Commissioner, 122 T.C. 32, 56-67 (2004)
(Halpern and Holmes, JJ., dissenting), vacated 439 F.3d 1009 (9th
Cir. 2006).  Citing Franklin Sav. Association v. Office of Thrift
Supervision, 934 F.2d 1127, 1136 (10th Cir. 1991), they
explained:  "The scope of judicial review refers merely to the
evidence the reviewing court will examine in reviewing an agency
decision.  The standard of judicial review refers to how the
reviewing court will examine that evidence." Id. at 56.  I

(continued...)

The legislative history establishes that in section 6330 cases Congress intended there to be a trial de novo in the Tax Court, that we can receive evidence beyond the administrative record, and we may consider issues not raised at the section 6330 hearing. Davis was premised on the idea that we would be able to hear issues and receive evidence beyond those raised or provided at the section 6330 hearing. If our review is limited to those issues raised at the section 6330 hearing (and possibly to the administrative record), Davis is outdated.

In order to fulfill our section 6330 review function, as mandated by Congress after lengthy and careful deliberation, the Court needs more information than is provided by current section 6330 hearings. This statement is tempered by almost a decade of experience handling section 6330 cases where the IRS consistently has attempted to limit the evidence the Court can review. Frequently the Court is provided virtually no record at all or the scant documents accumulated by Appeals, making meaningful review impossible.

By abandoning our precedent and interpreting the statute in

---

[12](...continued)
believe it is incorrect to conclude that when the standard of review is abuse of discretion that a fortiori the scope of our review is limited to the administrative record.

a manner contrary to the intent of Congress, the majority opinion bears striking similarity to the decision in <u>Billings v. Commissioner</u>, 127 T.C. 7 (2006).  I hope that Congress moves as expeditiously to correct the jurisprudential errors regarding section 6330 as it did to correct the jurisprudential errors regarding section 6015.[13]

---

[13]  See Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408, 120 Stat. 3061 (within a matter of months, Congress reinstated our jurisdiction to review the Commissioner's determinations under sec. 6015(f) as we originally had held in <u>Ewing v. Commissioner</u>, 118 T.C. 494 (2002), revd. 439 F.3d 1009 (9th Cir. 2006); <u>Billings v. Commissioner</u>, 127 T.C. 7 (2006) (abandoning <u>Ewing</u>); <u>Bartman v. Commissioner</u>, 446 F.3d 785, 787 (8th Cir. 2006), affg. in part and vacating in part T.C. Memo. 2004-93; <u>Commissioner v. Ewing</u>, 439 F.3d 1009 (9th Cir. 2006), revg. 118 T.C. 494 (2002) and vacating 122 T.C. 32 (2004).

MARVEL, J., dissenting:  This Court continues its struggle with sections 6320 and 6330.  In this case the majority holds that Mr. Giamelli's estate (the estate) may not raise any issue before this Court that Mr. Giamelli did not raise at his section 6320 administrative hearing (section 6320 hearing)[1] before the Internal Revenue Service (IRS) Appeals Office.  Because the majority opinion rejects both issues raised by the estate without drawing a distinction between an issue that could have been raised at the administrative hearing and was not and an issue that arises because of a change in circumstances occurring after the administrative hearing was held and the notice of determination was issued, I respectfully dissent.

In this case, Mr. Giamelli and his wife had filed a joint Federal income tax return for 2001 but did not pay the tax that was due with the return.  After assessing the tax reported on the return and requesting payment, respondent issued to the Giamellis a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320.  Mr. Giamelli, through counsel, timely requested an administrative hearing under section 6320.

The majority opinion states that Mr. Giamelli informed the Appeals officer to whom his hearing request was assigned that he wished to enter into an installment agreement and that the Appeals officer and Mr. Giamelli discussed the installment

---

[1]A hearing requested under sec. 6320 is conducted in accordance with sec. 6330(c), (d) (other than par. (2)(B) thereof), and (e).

agreement request during the ensuing months.  The discussions did not result in an installment agreement because Mr. Giamelli was not current with his estimated tax payments for tax years after 2001 as required by existing IRS guidelines.

After respondent issued a notice of determination to the Giamellis sustaining the tax lien filing for 2001, Mr. Giamelli filed a petition with this Court pursuant to sections 6320(c) and 6330(d).  The only issue raised by Mr. Giamelli in his petition was his desire to be allowed to enter into an installment agreement to resolve his unpaid tax liability for 2001.

Respondent and Mr. Giamelli subsequently reached an agreement regarding an installment agreement.  Unfortunately, before a decision document could be executed by the parties, Mr. Giamelli was killed in an automobile accident.  The majority opinion indicates that Mr. Giamelli's estate, of which Mrs. Giamelli is the executrix, will be substituted as petitioner.

Mrs. Giamelli, as executrix of the estate, repudiated the installment agreement and notified respondent that she wishes to disclose certain wrongdoings of her deceased husband that she believes will alter the underlying tax liability for 2001. Specifically, she wants to disclose alleged illegal payments that she believes are deductible and will reduce the tax liability reported on the 2001 joint return.  Respondent filed a motion for summary judgment in which he alleges that there is no dispute

regarding material facts and that respondent is entitled to summary disposition as a matter of law on the question of whether the Appeals Office abused its discretion in upholding respondent's collection action.

The majority opinion identifies two arguments raised by the estate's attorney for the first time after Mr. Giamelli's death. The first argument is that "Mr. Giamelli overstated his income tax liability [for 2001] in an effort to conceal fraudulent business dealings, and that consequently the estate is only a partial successor in interest to Mr. Giamelli." Majority op. p. 9. The second argument is that the estate "is a separate person entitled to its own collection review proceeding." Majority op. p. 16. Both arguments focus on an estate's standing to raise issues in a section 6320 proceeding. However, the first argument addresses an issue with respect to Mr. Giamelli's underlying tax liability that, at least in part, could have been raised by Mr. Giamelli at the section 6320 hearing but was not. The second argument addresses an issue that could not have been raised at the section 6320 hearing because Mr. Giamelli was still alive and there was no estate in existence to raise it.

The majority opinion treats both arguments as an untimely attempt on the part of the estate to raise an issue regarding Mr. Giamelli's underlying tax liability for 2001 that Mr. Giamelli

could have raised at the section 6320 hearing but did not.  The majority opinion concludes as follows:

> Because the only issue raised with the Appeals officer was the installment agreement, our review is limited to the determination reached by the Appeals officer to reject the proposed installment agreement because of Mr. Giamelli's noncompliance.  The argument that an estate is a separate person and is entitled to its own collection review hearing fails for the same reason.  While the estate has cited no authority for this novel argument, and we know of none, such an argument is not timely.  As discussed above, our review is limited to the determination issued by respondent's Appeals Office.  * * *

Majority op. p. 16.

The majority justifies its summary dismissal of the estate's argument that it is entitled to its own collection review hearing under section 6320 by its conclusion that the argument "is not timely".  However, the estate did not exist at any time during the section 6320 hearing process and consequently, could not have raised any issue before the Appeals Office.  It is only because of the unexpected death of Mr. Giamelli in an automobile accident after the section 6320 hearing process had been completed and after Mr. Giamelli had filed his petition in this Court that the estate came into being and had any opportunity to raise issues regarding the lien filed with respect to Mr. Giamelli's unpaid 2001 tax liability.

The majority appears to assume that the only reason the estate is contending it should receive a separate notice under section 6320 is to permit the estate to receive a section 6320

hearing at which it could raise an issue about the amount of Mr. Giamelli's 2001 tax liability.  Although that may be true, the assumption obscures the fact that the estate has raised a legal issue under section 6320 that should be addressed on its merits before summary judgment is granted.  That issue focuses on the standing of an estate to contest an unpaid tax liability of a taxpayer after the taxpayer has died,[2] and it is not an issue that could have been raised at the section 6320 hearing by Mr. Giamelli.  The majority's conclusion that the issue was not timely raised makes no sense.

COLVIN, SWIFT, LARO, and GALE, <u>JJ.</u>, agree with this dissenting opinion.

---

[2]Under Federal tax law, an estate is a separate taxable entity that may have an obligation to file both an estate tax return, see sec. 6018, and income tax returns, see sec. 6012(a)(3).  Under State law, an estate typically has obligations regarding the payment of a decedent's debts and the distribution of decedent's assets to beneficiaries.