T.C. Summary Opinion 2012-56

UNITED STATES TAX COURT

JOSE LUIS HERNANDEZ AND NELSY HERNANDEZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12052-10S L.                    Filed June 18, 2012.

Jose Luis Hernandez and Nelsy Hernandez, pro sese.

<u>William R. Brown, Jr.</u>, for respondent.

SUMMARY OPINION

GOEKE, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463[1] of the Internal Revenue Code in effect when the petition was filed.  Pursuant

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue
Code in effect at all relevant times.

to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

The petition in this case was filed in response to a notice of determination concerning collection action(s) under sections 6320 and/or 6330 with respect to an income tax liability for 2007. The issues for decision are:

(1) whether petitioners are entitled to dispute the underlying tax liability in this proceeding. We hold they are not; and

(2) whether the settlement officer (SO) abused her discretion in rejecting petitioners' proposed collection alternatives and sustaining the proposed collection action. We hold the SO did not.

Background

At the time the petition was filed, petitioners resided in Florida.

During 2007 Mrs. Hernandez received $77,020 from Hartford Life Insurance Co. in settlement of a long-term disability claim. Of this $77,020, $5,892 in Social Security and Medicare tax was withheld, but only $87 in Federal income tax was withheld. Petitioners were unaware that they owed additional tax on the money and in 2007 used it toward the purchase of a new home.

Petitioners' 2007 tax return was prepared by Amscot Tax Service and included the $77,020 in petitioners' taxable income. As a result, petitioners were

left owing $16,397 to the Internal Revenue Service (IRS) which they did not have the funds to pay.

In response to a Final Notice of Intent to Levy and Notice of Your Right to a Hearing, petitioners timely filed a Form 12153, Request for Collection Due Process (CDP) or Equivalent Hearing, dated September 1, 2009. On the Form 12153, petitioners requested that respondent consider an installment agreement and an offer-in-compromise as collection alternatives. Petitioners submitted a Form 656, Offer in Compromise, in which they offered to compromise their 2007 income tax liability for $2,000. In the offer-in-compromise, petitioners stated that they "are experiencing a lot of difficulties due to extensive house and medical expenses and are also having payment problems for our bills."

Petitioners' offer-in-compromise was assigned for determination to the IRS' Centralized Offer in Compromise Unit. A preliminary decision rejecting petitioners' proposed offer-in-compromise was mailed to them on March 9, 2010. This decision stated that the offer-in-compromise was being rejected because petitioners had the ability to fully pay the liability and that no special circumstances warranted a decision to accept the offer. The decision further stated that "A final determination on the offer will be issued by [the Office of] Appeals in conjunction with the CDP case."

The SO assigned to petitioners' CDP case reviewed the proposed offer-in-compromise and determined that petitioners' monthly disposable income was $188.[2] On the basis of this monthly disposable income the SO found that petitioners had the ability to pay $20,680, which was above the then-current outstanding liability of

---

[2]The SO determined that petitioners' combined monthly gross income was $4,333, comprising $956 paid to Ms. Hernandez in Social Security benefits and $3,375 in wages earned by Mr. Hernandez in his job as a truck driver. Petitioners claimed that Ms. Hernandez was paid $953 per month in Social Security benefits but also that Mr. Hernandez's monthly income was only $2,478. The primary difference between the figures petitioners and the SO reached on Mr. Hernandez's income is attributable to the SO's inclusion of overtime wages in Mr. Hernandez's income, whereas petitioners did not include any overtime wages. In addition, petitioners based their monthly figures on only 20 days worked per month (4 weeks) as opposed to taking into account the fact that there are more than 20 workdays in most months. The SO noted that a review of the 34 weekly pay period statements available showed that Mr. Hernandez's monthly income was $3,394 when overtime wages were included. However, the SO used a smaller figure of $3,375 apparently based on the 12 most recent weekly pay periods. This figure was smaller because the number of overtime hours Mr. Hernandez worked fluctuated from week to week.

Using national and local expense allowances (for items such as housing, utilities, healthcare, and transportation) as well as accounting for expenses specific to petitioners (such as union fees), the SO allowed them $4,145 in monthly expenses. Petitioners claimed only $3,513 in total monthly expenses. While petitioners claimed significantly less than the amounts allowed for transportation, taxes, and per-person expenses such as food (compiled by the IRS into a "national standard"), they claimed significantly more than the amounts allowed for healthcare as well as housing and utilities.

$15,908.[3]  As a result, the SO sustained the preliminary decision rejecting the offer-in-compromise.

Petitioners' CDP hearing was held on April 20, 2010.  During the hearing the SO informed petitioners that she sustained the rejection of the offer-in-compromise using the financial information received from petitioners.  The SO offered petitioners an installment agreement requiring payment of $188 per month that was based on petitioners' monthly disposable income.  Petitioners rejected this offer and made a counteroffer of $50 per month, stating that was the most they could pay.  The SO refused to accept petitioners' counteroffer.  The underlying tax liability was not raised at the CDP hearing.[4]

After determining that the requirements of applicable law and administrative procedure were met and considering the issues raised by petitioners, as well as whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concerns of petitioners that any

---

[3]Petitioners' current liability has been reduced to less than $7,000 as a result of application of tax refunds for later years to the amount owed.

[4]Petitioners filed an amended tax return with the IRS on October 12, 2010, which would have eliminated all taxes remaining due had it been accepted as filed.  However, because of a purported lack of substantiation of an additional $44,578 in expenses claimed as deductions on Schedule C, Profit or Loss From Business, the IRS refused to accept the amended return.

collection be no more intrusive than necessary, the SO sustained the proposed levy. On April 30, 2010, respondent issued a notice of determination to petitioners. Petitioners timely filed a petition contesting respondent's determination.

Discussion

I. Whether Petitioners Are Entitled To Raise the Underlying Tax Liability

In a CDP hearing a taxpayer may challenge the existence or amount of the underlying tax liability for any tax period if he did not receive a notice of deficiency for such liability or otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B). However, we do not have authority to consider section 6330(c)(2) issues that were not raised during the CDP hearing. Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); Akonji v. Commissioner, T.C. Memo. 2012-56.

Petitioners stated in their pretrial brief that "ever since the beginning of this nightmare we had been telling the agents that our taxes were filed wrong." However, respondent's case activity print (which contains a summary completed by the SO of the issues discussed during the CDP hearing) reflects that petitioners

did not raise the underlying tax liability with the SO.[5]  In addition, petitioners made

no offer of documentation of their effort to raise the underlying liability with the SO.

Therefore, we may not consider petitioners' underlying tax liabilities.[6]

II.  Whether the SO Abused Her Discretion in Rejecting Petitioners' Proposed
     Collection Alternatives and Sustaining the Proposed Collection Action

Where a taxpayer's underlying tax liability is not in dispute, the Court

reviews the Commissioner's determination for abuse of discretion.  See Sego v.

Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176,

182 (2000).  To establish an abuse of discretion, the taxpayer must prove that the

decision of the Commissioner was arbitrary, capricious, or without sound basis in

fact or in law.  Giamelli v. Commissioner, 129 T.C. at 111 (citing Sego v.

Commissioner, 114 T.C. at 610, and Woodral v. Commissioner, 112 T.C. 19, 23

(1999)); Tinnerman v. Commissioner, T.C. Memo. 2010-150, aff'd, 448 Fed.

Appx. 73 (D.C. Cir. 2012).  In reviewing for abuse of discretion, we generally

consider only the arguments, issues, and other matters that were raised at the

hearing or otherwise brought to the attention of the Appeals Office.  Giamelli v.

---

[5]Petitioners appear to have raised their underlying tax liabilities with other IRS agents outside of the Appeals Office.

[6]Even if we were able to consider the underlying tax liabilities, petitioners have not presented evidence that their 2007 tax liability was incorrect.

Commissioner, 129 T.C. at 115; Tinnerman v. Commissioner, T.C. Memo. 2010-150.

The only issues raised at the CDP hearing related to petitioners' claims that they did not have sufficient funds to pay their remaining tax liability or sufficient income to pay the $188 per month installment amount the SO proposed. Petitioners proposed both a $2,000 lump-sum offer-in-compromise and an installment agreement for payment of $50 per month. Each of these offers was rejected by the SO on the basis of her calculation of petitioners' income, which showed that petitioners had $188 per month in disposable income.

Although petitioners claimed their monthly expenses exceeded their monthly income, this claim was based on a calculation of Mr. Hernandez's monthly income that included no overtime hours and considered only 20 working days per month. Regarding petitioners' expenses, although some of the individual expenses they claimed exceeded the amounts the SO allowed (such as healthcare as well as housing and utilities), petitioners' total expenses claimed were actually less than those the SO allowed. We note that the SO calculated petitioners' allowable monthly expenses by using national and local expense allowances as well as accounting for expenses specific to petitioners.

We review an SO's determinations for an abuse of discretion, and we do not substitute our judgment for that of the SO. We must uphold the SO's determination unless it is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Considering the facts of this case, we find the SO's determination was not arbitrary, capricious, or without sound basis in fact or law. We therefore find the SO did not abuse her discretion in denying petitioners' proposed collection alternatives and sustaining the proposed collection action.

III. Conclusion

We hold that petitioners are not entitled to raise the underlying tax liability in this proceeding. We further hold that the SO did not abuse her discretion in rejecting petitioners' proposed collection alternatives and sustaining the proposed collection action. We therefore sustain the determinations of the SO.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.