T.C. Summary Opinion 2012-67

UNITED STATES TAX COURT

DREAMCO DEVELOPMENT CORP., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16136-11S L.                    Filed July 16, 2012.

Rosanne DiPizio (an officer), for petitioner.

<u>John M. Janusz</u>, for respondent.

SUMMARY OPINION

WELLS, <u>Judge</u>:  The petition in this case was filed pursuant to the provisions

of section 7463.[1]  Pursuant to section 7463(b), the decision to be entered is not

---

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code of 1986, as amended, and Rule references are to the Tax Court Rules of
Practice and Procedure.

reviewable by any other court, and this opinion shall not be treated as precedent for any other case. This case is before the Court on respondent's motion for summary judgment pursuant to Rule 121. We must decide whether respondent's Appeals Office abused its discretion when it upheld respondent's notices of intent to levy and notices of Federal tax lien with respect to the quarters ending March 31, June 30, September 30, and December 31, 2008; March 31, June 30, September 30, and December 31, 2009; and March 31, June 30, and September 30, 2010.

## Background

The facts set forth below are based upon examination of the pleadings, moving papers, responses, and attachments. Petitioner's principal place of business is in Cheektowaga, New York. Rosanne DiPizio (also known as Rosanne Lettieri) is petitioner's president (Ms. DiPizio). Petitioner is a developer and general contractor.

On June 4, 2010, petitioner untimely filed Forms 941, Employer's Quarterly Federal Tax Return, for the quarters December 31, 2008, through March 31, 2010. Petitioner included full payment of the tax with the Forms 941. Respondent assessed late filing and failure to pay additions to tax, failure to deposit penalties,

and interest against petitioner.[2]  On July 31, 2010, petitioner filed its Form 941 with respect to the quarter ending June 30, 2010.

On August 4, 2010, respondent's employee Susan Mitchell contacted Ms. DiPizio to attempt to collect the penalties and interest with respect to the quarters ending December 31, 2008, through March 31, 2010.  Ms. DiPizio requested abatement of the penalties; but because respondent had previously, on another occasion within the preceding three years, assessed a penalty against petitioner because of its failure to timely file and pay, Ms. Mitchell determined that petitioner was not eligible for abatement.

On August 20, 2010, respondent received petitioner's Forms 941 for the quarters ending March 31, June 30, and September 30, 2008.  Petitioner also paid the tax due with those returns.  On September 8, 2010, petitioner submitted a partial payment for the interest due on the returns filed on June 4, 2010.  On September 17, 2010, Ms. Mitchell received a letter from Ms. DiPizio again requesting abatement of the penalties.  Ms. DiPizio wrote:  "I have now hired an employee to handle the payments in a timely manner and do all the paperwork

[2]Throughout the correspondence in the record, the parties refer to the additions to tax and penalties without distinction as "penalties"; for clarity, we adopt their usage in this opinion.

necessary so that this issue does not happen again." Ms. Mitchell denied Ms. DiPizio's request for abatement.

On October 19, 2010, respondent mailed petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, with respect to petitioner's liabilities for the quarters ending March 31, 2008 through 2010. On October 31, 2010, petitioner filed its Form 941 with respect to the quarter ending September 30, 2010. On November 9, 2010, respondent mailed petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, with respect to petitioner's liabilities for the quarters ending March 31, 2008 through 2010.

On November 15, 2010, respondent received petitioner's Form 12153, Request for a Collection Due Process or Equivalent Hearing, regarding the proposed levy with respect to the quarters ending March 31, 2008 through 2010. On November 18, 2010, respondent received petitioner's Form 12153 regarding respondent's notice of Federal tax lien (NFTL) with respect to the quarters ending March 31, 2008 through 2010. On both Forms 12153 petitioner checked the box for Offer in Compromise and wrote: "Interest only, penalties waived. I have now employed the services of having this taken care of [sic] so it doesn't happen anymore [sic]."

On December 6, 2010, respondent assessed a Federal tax deposit penalty with respect to petitioner's deposits for the quarter ending June 30, 2010. On December 16, 2010, respondent mailed to petitioner a notice of intent to levy with respect to petitioner's liability for the quarter ending June 30, 2010. On December 20, 2010, respondent assessed a Federal tax deposit penalty with respect to petitioner's deposits for the quarter ending September 30, 2010. On December 28, 2010, respondent received petitioner's request for a collection due process hearing regarding the proposed levy with respect to petitioner's liability for the quarter ending June 30, 2010. On January 7, 2011, respondent mailed to petitioner a notice of intent to levy with respect to petitioner's liability for the quarter ending September 30, 2010. On January 14, 2011, respondent received petitioner's request for a collection due process hearing regarding the proposed levy with respect to petitioner's liability for the quarter ending September 30, 2010.

Respondent's Appeals Office acknowledged its receipt of petitioner's requests for collection due process hearings with four separate letters dated December 23, 2010, and January 25, February 4, and February 4, 2011. Settlement Officer Rebecca Warfield scheduled a telephone conference for February 15, 2011. Ms. Warfield requested that, before the conference, petitioner complete and submit a Form 433-B, Collection Information Statement for Businesses, and the required

attachments. Additionally, Ms. Warfield asked that petitioner submit other documents including: lists of officers, directors, and major shareholders; bank signature cards; lists of all real properties owned by petitioner; lists of all open accounts receivable; lists of all machinery and inventory on hand; and all unfiled Forms 941. Petitioner failed to submit any of the documents Ms. Warfield requested. On February 14, 2011, Ms. Warfield contacted petitioner's president, Ms. DiPizio. After reaching Ms. DiPizio, Ms. Warfield informed Ms. DiPizio that she had not received any of the requested documents. Ms. DiPizio acknowledged that she had not submitted the documents yet but that she was planning to do so the following day. Ms. Warfield gave petitioner an extension until February 28, 2011.

On February 16 and 18, 2011, Ms. DiPizio faxed at least some of the requested documents to Ms. Warfield, including a number of Forms 941. On the Form 433-B, Ms. DiPizio disclosed that petitioner's assets included more than $33,000 in cash and equity in real property of $128,916. The Form 433-B also showed that petitioner had lent Ms. DiPizio more than $87,000. The Form 433-B showed that, during the six-month period ending December 31, 2010, petitioner had monthly income of $1,815,265 and monthly expenses of $1,805,844, including gross wages and salaries of $406,851.

Ms. Warfield held a telephone conference with Ms. DiPizio on February 28, 2011. During the telephone conference, Ms. Warfield advised Ms. DiPizio that petitioner was not eligible for the proposed offer-in-compromise because its equity in real property alone was sufficient to pay its liability. Ms. DiPizio stated that her divorce decree required her to transfer the real property to her former husband. Ms. Warfield also advised Ms. DiPizio that petitioner again was behind on filing its quarterly returns, and Ms. DiPizio said that she would fax copies of the returns to Ms. Warfield, which she did on March 3, 2011.

On June 2, 2011, respondent mailed to petitioner three separate Notices of Determination Concerning Collection Action(s) Under Section 6330 (notices of determination). One of the notices of determination sustained the levy action with respect to petitioner's tax quarters ending March 31, June 30, September 30, and December 31, 2008; March 31, June 30, September 30, and December 31, 2009; and March 31, 2010. No notice of determination was issued with respect to the lien action for those quarters; respondent acknowledges that this omission was an inadvertent error. The other two notices of determination sustained both the lien and levy actions with respect to the quarters ending June 30, and September 30, 2010.

The notices of determination explained that petitioner was not eligible for the proposed offer-in-compromise because petitioner had not yet filed all of the Forms 941 required, including returns for the quarters ending March 31, June 30, and September 30, 2004, June 30, 2005, March 31, 2006, and March 31, 2011;[3] because petitioner had not yet filed its Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return for 2005 or 2006; and because petitioner had fallen behind again on its tax deposits during May 2011. The notices of determination also noted that petitioner had sufficient equity in assets to satisfy the amount due. With respect to petitioner's request for abatement of penalties, the notices of determination stated:

> During the Collection Due Process hearing, at your request, the Settlement Officer also discussed the possibility of relief from penalties associated with the tax assessment. You were encouraged to review the information available and www.irs.gov, and a brief discussion of Reasonable Cause as basis for relief took place. Appeals advised you that a period of time would be given to you for the purpose of providing a request of that nature and supportive documentation for this consideration. While Appeals is aware of your current efforts to secure professional assistance to ensure the difficulties of complying with filing and payment of federal tax liabilities and would support the continuation of those efforts, this does not constitute Reasonable Cause basis for relief of prior penalties. Appeals has considered in full your request for relief from penalties separately. That consideration does not provide for any relief at this time.

---

[3]Although Ms. DiPizio faxed at least some of those Forms 941 to the Appeals Office on February 16 and 18, 2011, for reasons that are not entirely clear from the record the Appeals Office did not process them.

Separately, on June 2, 2011, Ms. Warfield mailed petitioner a letter denying its request for adjustment of the penalties. In the letter, Ms. Warfield explained the process for appealing the determination of the Appeals Office with respect to the penalties. The record contains no evidence that petitioner pursued any further actions with respect to its request for adjustment of the penalties.

Petitioner timely filed its petition in this Court. Petitioner contends in its petition that it has filed all the required Forms 941 even though it was not required to do so because it is a seasonal employer, that it does not have equity sufficient to pay the amount due, that it is current on its tax obligations, and that it will suffer hardship if it has to pay the full amount of its liabilities. The petition does not mention the denial of petitioner's request for abatement of penalties.

Respondent filed a motion for summary judgment, and we ordered petitioner to file a response to respondent's motion. However, petitioner failed to file a response. Before the date set for trial, respondent filed a motion to continue the trial so that the Court could consider respondent's motion for summary judgment. We ordered petitioner to file a response to respondent's motion to continue the trial, but petitioner again failed to file a response. Petitioner also failed to appear at the

calendar call for the Court's Buffalo, New York, trial session on April 10, 2012.

On April 13, 2012, we granted respondent's motion to continue the trial.

Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials and may be granted where there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). However, the party opposing summary judgment must set forth specific facts that show a genuine issue of material fact exists and may not rely merely on allegations or denials in the pleadings. Rule 121(d). Under Rule 121(d), if the adverse party does not respond to the motion for summary judgment, this Court may, where appropriate, enter a decision against that party. Baker v. Commissioner, T.C. Memo. 2001-283. Even though petitioner failed to respond to respondent's motion and failed to appear at trial, we will address the contentions petitioner raised in its petition.

If a taxpayer requests a hearing in response to a notice of Federal tax lien or a notice of levy pursuant to section 6320 or 6330, a hearing shall be held before an impartial officer or employee of the Appeals Office. Sec. 6330(b)(1), (3). At the hearing the taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Sec. 6330(c)(2)(A). A taxpayer is precluded from contesting the existence or amount of the underlying tax liability, unless the taxpayer did not receive a notice of deficiency for the liability in question or did not otherwise have an earlier opportunity to dispute the liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000). The phrase "underlying tax liability" includes the tax deficiency, additions to tax, and statutory interest. Gray v. Commissioner, 138 T.C. ___, ___ (slip op. at 10) (Mar. 28, 2012); Katz v. Commissioner, 115 T.C. 329, 339 (2000).

Following a hearing, the Appeals Office must determine whether to sustain the filing of the lien and whether proceeding with the proposed levy action is appropriate. In making that determination, the Appeals Office is required to take into consideration: (1) verification presented by the Commissioner during the hearing process that the requirements of applicable law and administrative procedure have been met, (2) relevant issues raised by the taxpayer, and (3) whether the

proposed lien or levy action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3).

Section 6330(d)(1) grants this Court jurisdiction to review the determination made by the Appeals Office in connection with the section 6330 hearing. Where the underlying tax liability is properly in issue, we review the matter de novo. See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). However, where the validity of the underlying tax liability is not properly in issue, we will review the determination of the Appeals Office for abuse of discretion. Lunsford v. Commissioner, 117 T.C. 183, 185 (2001); Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182. An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner does not contest its underlying liabilities;[4] therefore, we review the determination of the Appeals Office for abuse of discretion. We have held that it is not an abuse of discretion for the Appeals Office to refuse to consider a taxpayer's offer-in-compromise on the grounds that the taxpayer has a history of

_____

[4]In its petition, petitioner did not raise the issue of respondent's denial of its request for abatement of penalties. Accordingly, we deem that issue conceded. See Rule 331(b)(4).

noncompliance and is not in compliance with current tax obligations. See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007). In doing so, the Appeals Office is following the requirements of the regulations. See secs. 301.6320-1(d)(2), Q&A-D8, sec. 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs. ("the IRS does not consider offers to compromise from taxpayers who have not filed required returns or have not made certain required deposits of tax").

Petitioner contended in its petition that it has filed all the required Forms 941 even though it was not required to do so because it is a seasonal employer. Petitioner's contention that it is a seasonal employer and therefore not required to file Forms 941 is belied by the fact that, in many years, petitioner paid employees during every quarter. Moreover, petitioner's business is general contracting, which is not an industry, such as farming, typically associated with seasonal employees, and the administrative record contains no evidence that would suggest petitioner should be considered a seasonal employer. Accordingly, we conclude that petitioner has not shown that it was a seasonal employer. Therefore, petitioner was required to file Forms 941 every quarter, even when it did not have employees on its payroll. See IRS Publ'n 15 (Circular E), Employer's Tax Guide (2010). Although petitioner contests respondent's assertion that it failed to file all required Forms 941 and Forms 940, petitioner has offered no evidence to support its contention. Similarly, although

petitioner contends that it is current with its tax obligations, it offered no evidence to contradict respondent's records that it is again behind on its Federal tax deposits. Accordingly, we conclude that there is no genuine issue of material fact as to whether petitioner is in compliance with its tax obligations. We conclude that petitioner is not in compliance with its filing and paying obligations and that it therefore was not an abuse of discretion for respondent's Appeals Office to reject petitioner's offer-in-compromise on those grounds. See Giamelli v. Commissioner, 129 T.C. at 111-112.

On the basis of the foregoing, we hold that respondent's Appeals Office did not abuse its discretion, and therefore we will grant respondent's motion for summary judgment.

In reaching the foregoing holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order and decision

will be entered for respondent.