T.C. Memo. 2012-284

UNITED STATES TAX COURT

ROBERT G. FIELDER AND DEBORAH R. FIELDER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23473-11L.                    Filed October 4, 2012.

<u>Robert Alton West</u>, for petitioners.

<u>John Chinnapongse</u> and <u>Jessica R. Browde</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  Petitioners, while residing in California, petitioned the Court

under section 6330(d) to review a determination by respondent's Office of

Appeals (Appeals) sustaining a proposed levy to collect from petitioners

[*2] $98,891.37 of unpaid tax liabilities for 2007.[1]  This collection case is now before the Court on respondent's summary judgment motion.  See Rule 121.  Despite a Court order to do so, petitioners have failed to file a response to the motion.  We are asked to decide whether respondent is entitled to a summary adjudication that Appeals did not abuse its discretion in sustaining the proposed levy.  We hold that he is not so entitled because we find there is a genuine dispute as to material facts with respect to respondent's assessment of additions to tax relating to petitioners' 2007 return.

Background

Our background statement of this case is derived from the pleadings and various exhibits submitted in support of the motion for summary judgment.

On or about July 30, 2009, petitioners filed their 2007 Federal income tax return (2007 return).  Respondent assessed the tax shown on the 2007 return and additions to tax as follows:

|  |  |  | Additions to tax | | |
|  |  | Date of | Sec. | Sec. | Sec. |
| Year | Deficiency | Assessment | 6651(a)(1) | 6651(a)(2) | 6654(a) |
| 2007 | $103,656.81 | 8/31/2009 | $15,380.96 | $5,778.81 | $1,193.27 |

[1]Unless otherwise indicated, section references are to the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] In addition, respondent assessed statutory interest of $5,553.24.

Respondent sent to petitioners by certified mail a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (CDP notice) dated March 22, 2010. The CDP notice notified petitioners that respondent proposed to levy on their property or property rights to collect from them unpaid tax liabilities totaling $98,891.37. The CDP notice also advised petitioners of their right to a hearing with Appeals as to the proposed levy. In response to the CDP notice, petitioners mailed to respondent a Form 12153, Request for a Collection Due Process or Equivalent Hearing, dated March 27, 2010. On the Form 12153, petitioners requested respondent to consider an installment agreement as a collection alternative.[2] Petitioners did not provide any specific terms for the installment agreement. Appeals assigned petitioners' collection due process (CDP) hearing request to Settlement Officer Robert Baxter (SO Baxter).

By letter dated September 20, 2010, SO Baxter informed petitioners that he had scheduled a CDP hearing by telephone for October 28, 2010 (October 28 conference). The letter advised petitioners that SO Baxter could consider

_____

[2]The Form 12153 indicated the hearing request was also made with respect to a notice of Federal tax lien filing and reflected petitioners' desire to have the lien withdrawn. Respondent represents to the Court that his records do not suggest that a lien was filed for 2007.

**[*4]** alternative collection methods, such as an installment agreement or an offer-in-compromise, only if petitioners filed within 14 days a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals (Form 433-A).

On October 19, 2010, petitioners submitted to Appeals by facsimile a Form 433-A (first Form 433-A). The first Form 433-A indicated that petitioner Robert Fielder was a self-employed farmer and petitioner Deborah Fielder was a self-employed owner of a wireless store. Petitioners further indicated that they had $2,053.76 in two checking accounts and owned real property described as "HOME/FARM" in McArthur, California (McArthur property), with a claimed fair market value of $750,000[3] subject to a $400,000 liability. The first Form 433-A also stated petitioners had equity of $13,000 in two personal vehicles and various household furnishings with unknown fair market values. Petitioners also indicated that they received Social Security benefits and child support of $3,365 per month and incurred monthly living expenses of $6,670. The copy of the first Form 433-A respondent provided as part of the record does not include pages 5

---

[3]Petitioners put two question marks next to the fair market value, possibly indicating that the figure was only an estimate or a conjecture.

[*5] and 6 on which we would normally expect to find petitioners' self-employment income information.

On October 28, 2010, SO Baxter called petitioners at the scheduled time, and Mr. Fielder received the call. Mr. Fielder appeared to be upset about the interest accrued. Mr. Fiedler also complained to SO Baxter that the additions to tax were unfair because petitioners had requested and were granted an extension of time to file the 2007 return until October 15, 2008, and had called the Internal Revenue Service (IRS) before the due date to inform the IRS that his accountant was no longer preparing tax returns. Following some back-and-forth, Mr. Fielder stated he had had the 2007 return prepared as quickly as possible. In addition, Mr. Fielder explained to SO Baxter that he had sold some property for a reduced amount of $50,000 and offered to satisfy petitioners' tax liabilities with the $50,000 because, as he claimed, that was all the money they had. Mr. Fielder also advised SO Baxter that he had listed the McArthur property for sale and suggested that respondent use the proceeds from the sale to satisfy petitioners' tax liabilities.

In response, SO Baxter first explained that the interest accrued was not a result of ministerial error. SO Baxter also inquired about petitioners' self-employment income and informed Mr. Fielder that he had not completed the self-employment portion of the first Form 433-A, to which Mr. Fielder responded that

**[\*6]** he was unable to get the required information. SO Baxter also noted there was no record showing petitioners had filed their 2009 Federal income tax return, although Mr. Fielder replied that he and his wife had filed a return for 2009 and had a letter stating that there was an overpayment of $4,608. SO Baxter advised petitioners that they had to file an offer-in-compromise with respondent in order for respondent to consider their offer to settle the case for $50,000 or for the proceeds from the sale of the McArthur property if and when the property were in fact sold. In addition, SO Baxter informed petitioners that he needed to consult with the Appeals team manager as to whether they could enter into a collateral agreement with respondent with respect to the McArthur property.

Following the October 28 conference, SO Baxter transferred petitioners' hearing request to another Appeals office to consider the collateral agreement that he had discussed with Mr. Fielder. Consequently, Appeals reassigned the hearing request to Settlement Officer Vander Linden (SO Vander Linden) on November 5, 2010.

On December 14, 2010, respondent received from petitioners a signed Form 656, Offer in Compromise, and an unsigned Form 433-A in support of the offer-in-compromise (second Form 433-A). Petitioners offered to compromise their unpaid 2007 tax liabilities for a lump-sum payment of $30,000 payable within one

[*7] month of acceptance. In the section entitled "Explanation of Circumstances" petitioners explained that Mr. Fielder's heart condition (and related surgeries) had prompted his early retirement. Petitioners also explained they would secure the funds for their offer-in-compromise from their adult children.

The second Form 433-A was mostly the same as the first Form 433-A with a few notable exceptions. First, petitioners' available cash had decreased from around $2,050 to $1,150. Second, petitioners had begun leveraging themselves with credit card debt--two cards were quickly approaching their limits. Third, and most significantly, petitioners claimed the fair market value of the McArthur property was $400,000 and not $750,000 as reported on the first Form 433-A. The reduced fair market value left petitioners with zero equity in the McArthur property. Petitioners did not complete any section reporting that they had earned income.

In response to petitioners' offer-in-compromise, SO Vander Linden mailed them a letter dated February 8, 2011, informing them that they must: (1) complete the self-employment income portion on the second Form 433-A, (2) provide a more recent and signed Form 433-A (third Form 433-A), (3) submit financial documents to support their offer-in-compromise, (4) provide proof that their 2009 return was filed, and (5) submit other documentation and information showing

**[\*8]** they were in compliance with their Federal tax obligations. SO Vander Linden noted in the letter that he could not consider any collection alternative unless petitioners provided all requested information. SO Vander Linden scheduled a second CDP hearing with petitioners by telephone for February 22, 2011 (February 22 hearing).

Before the February 22 hearing petitioners sent to Appeals a package of financial information which Appeals received on February 17, 2011. An enclosure letter stated petitioners' belief that they had included (1) a completed and signed third Form 433-A, (2) all requested financial documents, (3) a copy of their 2009 return, and (4) various explanations as to the amount of petitioners' income. The package included the third Form 433-A signed by Mr. Fielder but not Mrs. Fielder and a copy of petitioners' efiled 2009 Federal income tax return signed by both petitioners.[4] The third Form 433-A reported that Mrs. Fielder's business earned zero monthly income and incurred monthly expenses of more than $2,400. The third Form 433-A did not include detailed information about petitioners' monthly income and living expenses, though they included various

_____

[4]Respondent contends only Mr. Fielder executed the 2009 Federal tax return. However, included as part of the 2009 Federal tax return was Form 8879, IRS e-file Signature Authorization, which clearly shows both petitioners signed and dated the e-filed return.

[*9] financial information, such as bank statements, proof of vehicle and real property insurance premiums, proof of health insurance premiums, proof of mortgage payments, credit card statements, and utilities statements. The third Form 433-A, like the second Form 433-A, reported that the claimed fair market value of the McArthur property was $400,000.

During the February 22 hearing SO Vander Linden reviewed with Mr. Fielder the CDP hearing process and Appeals' criteria for accepting petitioners' offer-in-compromise. SO Vander Linden noted that he had not concluded which collection alternative was the most appropriate and would be able to do so only if he had "a complete picture of the taxpayers' financial circumstances." SO Vander Linden asked Mr. Fielder whether there were any remaining investments, section 401k plans, or retirement accounts. In addition, SO Vander Linden pointed out several compliance issues that needed to be resolved before he could consider petitioners' offer-in-compromise, including employment taxes relating to the cell phone business and any unfiled Federal income tax returns relating to a veterinary business petitioners previously owned. On the issue of valuing the McArthur property, SO Vander Linden suggested that Mr. Fielder obtain from petitioners' realtor a "realistic" market appraisal and from the county assessor the assessed value of the McArthur property for property tax purposes. Finally, SO Vander

**[*10]** Linden requested that petitioners provide a current income statement for 2010 for the cell phone business.

Mr. Fielder responded that petitioners had income from Social Security benefits that he and his daughter received monthly. He also acknowledged that Mrs. Fielder regularly received supplemental Social Security benefits for her chronic back pain. Mr. Fielder pointed out that these benefit payments were petitioners' only consistent source of income. Mr. Fielder noted that the farming business income was small and sporadic and that the cell phone business reported losses in 2009 and might have also suffered a loss in 2010. Mr. Fielder also stated that they had no investment or retirement accounts. At the end, Mr. Fielder agreed to provide an appraisal for the McArthur property from his realtor and obtain assessor information from the county. Mr. Fielder also agreed to work with SO Vander Linden to resolve the compliance issues and provide a 2010 income statement for the cell phone business.

After the February 22 hearing, petitioners submitted to the Appeals office a "comparable market analysis" (analysis) prepared by Coldwell Banker and dated March 3, 2011. The analysis stated that the appraiser had reviewed active properties for sale that were most comparable to the McArthur property and properties that had been sold in the previous two years in the same market as the

[*11] McArthur property. After adjusting values of the comparable properties, Coldwell Banker concluded that "if Mr. and Mrs. Fielder had to close escrow on their property in the next 30 - 60 days in this very poor market, they would have to consider marketing the property at 'fire sale' pricing within the range of $480,000 - $525,000." The analysis also noted that any sale would likely be a cash sale because financing would be difficult.

SO Vander Linden followed up with telephone calls to petitioners on March 29 and 30, 2011. During these calls SO Vander Linden requested a 2010 income statement or a draft of the 2010 Federal income tax return for the cell phone business. SO Vander Linden asked petitioners to submit the requested information within the week. In the interim SO Vander Linden collected information showing that the McArthur property was assessed for property tax purposes at around $750,000.

For reasons not clear from the record, the next communication between petitioners and SO Vander Linden occurred almost five months later. On August 26, 2011, SO Vander Linden held a final telephone conference with Mr. Fielder. SO Vander Linden had requested from petitioners a draft of the 2010 Federal tax return and a year-to-date income statement for the cell phone business, but Mr. Fielder indicated he would not be able to provide this information because his

[*12] accountant was still working on resolving some issues in the prior years' returns and would not be able to file the 2010 return until those issues were resolved. Mr. Fielder asserted the cell phone business was operating at a loss.

SO Vander Linden and petitioners also discussed the discrepancy between the appraised value and the assessed value of the McArthur property. Mr. Fielder indicated petitioners had appealed the assessment and were awaiting the result. Without current income information and a more definitive valuation of the McArthur property, SO Vander Linden explained, he could offer only to place the collection case on currently not collectible (CNC) status until petitioners could provide updated income statements and a more definitive determination of the McArthur property's value. Mr. Fielder declined SO Vander Linden's offer and insisted SO Vander Linden take petitioners' settlement offer as is. The conferences ended there.

On September 9, 2011, SO Vander Linden sent to petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, sustaining the levy action. In the notice of determination, Appeals rejected petitioners' offer-in-compromise for two reasons. First, Appeals stated it was not able to determine the correct fair market value of the McArthur property. Second,

**[\*13]** petitioners did not submit to Appeals the requested income statements for the farming and the cell phone businesses.

Petitioners timely petitioned the Court to challenge the notice of determination. In the petition, petitioners claim Appeals erred in not deferring respondent's levy action and in rejecting petitioners' offer-in-compromise. Petitioners also claim they are not liable for any additions to tax respondent determined.

## Discussion

Summary judgment may be granted with respect to all or any part of the legal issues in controversy where the record establishes "that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law." Rule 121(a) and (b); Craig v. Commissioner, 119 T.C. 252, 259-262 (2002). As the moving party, respondent bears the burden of proving that there is no genuine dispute of material fact, and factual inferences are viewed in the light most favorable to petitioners as the nonmoving party. See Craig v. Commissioner, 119 T.C. at 260. Respondent supports his motion with the pleadings, a declaration from SO Vander Linden, and various exhibits. Petitioners did not file a response to respondent's motion. Nonetheless, the Court finds that respondent has failed to meet his burden to show there is no genuine dispute of material fact with respect

[*14] to whether petitioners are liable for the additions to tax. Accordingly, summary judgment is not appropriate and the motion must be denied.

Respondent asserts he is entitled to judgment as a matter of law for two reasons. First, respondent contends that petitioners may not dispute the additions to tax because they did not properly raise this issue at the CDP hearing. Second, respondent asserts that Appeals did not abuse its discretion in rejecting petitioners' offer-in-compromise.[5] We disagree with respondent that there are not material facts at issue because, as we find, the record supports a finding that petitioners asserted during the CDP hearing that they are not liable for the additions to tax.

Section 6330(c)(2)(B) permits taxpayers to challenge at a CDP hearing the existence or amount of the underlying tax liability to which a collection action relates only if the taxpayers did not receive a notice of deficiency for the liability or did not otherwise have an opportunity to dispute the liability. In addition, upon petition to the Court under section 6330(d)(1) to review Appeals' determinations, taxpayers may dispute the underlying tax liability only if they raised the issue at the CDP hearing under section 6330(c)(2)(B). See Giamelli v. Commissioner, 129 T.C. 107, 112-114 (2007). Requiring taxpayers to raise liability issues first with

_____

[5]For purposes of discussing respondent's entitlement to summary judgment, we consider only petitioners' $30,000 offer-in-compromise, the only offer submitted on Form 656.

**[\*15]** the Appeals Office preserves the Appeals officer's role in the administrative review process and ensures any judicial consideration of such issues would not frustrate Congress' intent to streamline this review process. See id. at 114-115.

Respondent takes the position in his motion that petitioners did not properly assert they are not liable for the additions to tax because they did not raise the dispute in their Form 12153 hearing request. As respondent sees it, the record supports his assertion that petitioners were merely confirming the accuracy of the information given to them by the IRS and were not substantively disputing the existence or amount of the liability.

SO Baxter's case activity record shows that Mr. Fielder challenged the additions to tax during the October 28 conference.[6] Mr. Fielder told SO Baxter that he "thought that the penalty assessment was unfair." Then, Mr. Fielder continued to explain that he was not able to file the 2007 return timely because his accountant had stopped preparing tax returns for petitioners and that was "as fast as he could get it done." Moreover, the case activity record shows SO Baxter considered Mr. Fielder's assertions and attempted to explain why the imposition of the additions to tax was correct. Thus, we decline to find on the record before us

---

[6]The record indicates petitioners never received a notice of deficiency for the year at issue.

**[\*16]** that Mr. Fielder's statements were not a challenge to the underlying tax liabilities. Construing the facts in the light most favorable to petitioners, we believe it is quite possible that Mr. Fielder was making the case during the CDP hearing that they should not be liable for the additions to tax.[7]

Nor do we accept respondent's position that petitioners were precluded from challenging the additions to tax because they did not raise the issue in their Form 12153 hearing request. Neither the statute nor our caselaw requires a taxpayer to raise the liability issue in the request for a CDP hearing for it to be considered properly at issue. The statute provides only that a taxpayer may raise the issue of underlying tax liability at the CDP hearing if the taxpayer did not receive a notice of deficiency or did not otherwise have an opportunity to dispute such tax liability, and the determination by an Appeals officer is subject to judicial review under section 6330(d). See sec. 6330(c)(2)(B), (d); Giamelli v. Commissioner, 129 T.C. at 112-113. The statute does not speak to the timing for raising the issue. The

---

[7]We find other errors in the notice of determination which raise doubt as to respondent's entitlement to summary adjudication. Specifically, respondent states that Mrs. Fielder did not sign and date the 2009 Federal return which petitioners provided before the February 22 hearing. The record is clear, however, that both petitioners signed and dated the efiled return. See supra note 4. Further, the notice of determination does not show that SO Vander Linden considered the additions to tax issue raised by petitioners as he was required to do under sec. 6330(c)(3)(B).

**[*17]** issue of underlying liability will be considered properly raised if a taxpayer raises it at any time during a CDP hearing. See Collier v. Commissioner, T.C. Memo. 2004-171, 88 T.C.M. (CCH) 38, 40 (2004) (reviewing issue of underlying liability for abuse of discretion because "[n]othing in the record indicates that petitioner has at any time throughout the administrative * * * proceedings * * * attempted to challenge his underlying tax liability"); cf. Schwartz v. Commissioner, T.C. Memo. 2008-117, 95 T.C.M. (CCH) 1427, 1430 n.9 (noting liability is not at issue because, while taxpayer raised it in their requests for a CDP hearing, taxpayer did not pursue the claim at the hearing), aff'd, 348 Fed. Appx. 806 (3d Cir. 2009).

Respondent further claims petitioners may not raise the issue relating to the additions to tax in their judicial proceeding because they did not "dispute that they failed to timely file and pay" and were not substantively disputing the existence or amount of the liability. Appeals' case activity record appears to contradict respondent's factual assertion because the record tends to show petitioners raised their affirmative defenses under section 6651. Thus, the issue was properly raised in the petition. See Giamelli v. Commissioner, 129 T.C. at 115.

Finally, we note that respondent's reliance on Zapara v. Commissioner, 124 T.C. 223 (2005), aff'd, 652 F.3d 1042 (9th Cir. 2011), is misplaced. Respondent

[*18] argues that petitioners have abandoned the issue of their liability for the additions to tax because they failed to raise it in hearings after the October 28th conference. Zapara is inapposite at this early stage of the proceeding. In Zapara, the Court found the taxpayers abandoned an argument made in the pretrial memorandum and at trial because they did not advance their argument on brief. Here, petitioners have not yet been ordered to file a brief on the issues raised at the CDP hearing. As long as petitioners raised the issue at the hearing to provide the settlement officers an opportunity to consider the issue and petitioners' arguments and evidence relating to it, the Court is satisfied that the issue was properly raised at the hearing. See Giamelli v. Commissioner, 129 T.C. at 114-115; 301.6330-1(f), Q&A-F3, Proced. & Admin. Regs. Whether petitioners can establish that their failures to file and to pay were due to reasonable cause and not to willful neglect is an issue best decided following trial.

To reflect the foregoing,

An appropriate order will be issued denying respondent's motion.