T.C. Memo. 2012-322

UNITED STATES TAX COURT

JEAN BRIDGMON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24708-10L.                    Filed November 20, 2012.

Jean Bridgmon, pro se.

<u>Christopher A. Pavilonis</u>, for respondent.

MEMORANDUM OPINION

MORRISON, <u>Judge</u>:  The IRS notified petitioner, Ms. Jean Bridgmon, that it intended to use its levy power to collect her income-tax liabilities for the tax years 2003, 2004, and 2005.  Bridgmon requested a collection-review hearing with the IRS Appeals Office (Appeals Office).  She received an adverse determination

[*2] from that office. She has appealed that determination to this Court. We do not sustain the Appeals Office's determination. We direct that Bridgmon's case be remanded to the Appeals Office.

Bridgmon alleges two errors by the Appeals Office. First, she alleges that the Appeals Office erred in failing to grant relief from additions to tax for 2003 and 2004. As we explain below, Bridgmon was barred from challenging these additions to tax at the Appeals Office because she had had a prior opportunity to do so. Thus, the Court cannot review the correctness of the additions to tax. Even so, the background section of our opinion describes the assessment of additions to tax by the IRS and various notices sent by the IRS to Bridgmon regarding the additions to tax. It is not obvious how some of the amounts of the additions to tax reflected in the assessments and notices relate to each other or how they were computed. Our description does not attempt to resolve these questions.

The second error Bridgmon alleges is that the Appeals Office failed to consider her proposal to make installment payments of her tax liabilities. The reasons the Appeals Office did not consider the proposal are that Bridgmon allegedly failed to telephone the Appeals Office at the time and date scheduled for her hearing with the Appeals Office and that she did not submit financial information that the Appeals Office had requested. We find that Bridgmon did

**[*3]** call the Appeals Office at the scheduled date and time. We further find that the Appeals Office did not telephone Bridgmon at the scheduled date and time. The scheduled telephone conference was to be Bridgmon's primary opportunity to discuss her installment agreement proposal with the Appeals Office. Under these circumstances, we hold that the Appeals Office erred in failing to make better efforts to contact Bridgmon (such as telephoning her) even though Bridgmon did not submit the requested financial information. Bridgmon should be afforded another opportunity for a hearing with the Appeals Office.

All section references are to the Internal Revenue Code (Code) in effect at all relevant times.

## Background

We adopt the stipulation of facts executed by Bridgmon and respondent. We refer to respondent here as the IRS.

Bridgmon did not file income-tax returns for 2003 and 2004.

On October 11, 2006, the IRS prepared substitutes for returns for Bridgmon for 2003 and 2004.

On February 20, 2007, the IRS issued separate notices of deficiency to Bridgmon for the 2003 and 2004 tax years. Bridgmon received the notices. The notices reflected the following determinations:

- 4 -

| [*4] | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
| 2003 | $34,501 | $7,762.72 | [1]$5,347.65* | $890.20 |
| 2004 | 41,835 | 9,412.87 | [1]3,974.32* | 1,198.81 |

[1]The asterisk beside the sec. 6651(a)(2) amount apparently denotes that the full amount of the addition to tax has not yet accrued.

Each notice stated: "If you want to contest this determination in court before making any payment, you have until * * * [May 21, 2007] * * * to file a petition with the United States Tax Court for a redetermination of the amount of your tax."

Attached to each notice of deficiency was a cover letter that stated:

Please attach the top portion of this cover letter to your tax return and send it to us. Your return will be processed faster. You can use the envelope we've enclosed.

Filing a petition in tax court is not necessary if you file the return with the IRS within the time stated in this letter package.

On or about May 15, 2007, Bridgmon submitted Forms 1040, U.S. Individual Income Tax Return, for 2003, 2004, and 2005. Attached to the Forms 1040 for 2003 and 2004 was the top portion of the cover letter excerpted above. The Forms 1040 reported the following liabilities:

[*5]                    Liabilities reported by Bridgmon on her Forms 1040

|            |            | Addition to tax |             |
| Year       | Tax        | Sec. 6654(a)    | Total       |
|------------|------------|-----------------|-------------|
| 2003       | $22,818    | $450.00         | $23,268.00  |
| 2004       | 12,148     | ---             | 12,148.00   |
| 2005       | 9,763      | 391.61          | 10,154.61   |

Bridgmon did not file a petition with the Tax Court for redetermination of the deficiencies for 2003 and 2004. (The IRS did not determine a deficiency for 2005. Therefore Bridgmon did not have a right to file a petition for 2005.)

On July 16, 2007, the IRS issued Bridgmon a statutory notice of balance due for her 2005 year.[1] The notice stated that Bridgmon owed $14,364.68 as of August 6, 2007. It is unnecessary to describe how the $14,364.68 amount was calculated because Bridgmon did not challenge the correctness of this amount with the Appeals Office.

On July 27, 2007, the IRS made the following assessments for Bridgmon's 2003, 2004, and 2005 years:

---

[1]The IRS' records describe the notice as a statutory notice of balance due, and that is how we describe this notice and other notices so described in the IRS' records. Other notices are described in the IRS' records as notices of balance due, and we describe these notices as notices of balance due.

[*6]                                July 27, 2007 assessments

| Year | Tax | Estimated-tax penalty[1] | Late-filing penalty | Failure-to-pay penalty | Interest |
|------|-----|--------------------------|---------------------|------------------------|----------|
| 2003 | $22,818 | $450.00 | $5,134.05 | $4,677.69 | $6,379.08 |
| 2004 | 12,148 | 348.00 | 2,733.30 | 1,761.46 | 2,479.53 |
| 2005 | 9,763 | 391.61 | 2,196.67 | 781.04 | 1,232.36 |

[1]The headings in this table use the same terminology as the IRS records that describe the assessments. The IRS records do not provide the Code sections underlying the imposition of each "penalty".

On August 7, 2007, the IRS sent Bridgmon a letter referring to her "inquiry dated June 21, 2007." The letter stated that the IRS had made corrections to the Form 1040 she had submitted for 2004. The letter stated: "You did not include the Estimated Tax Penalty of $348 in your total. This increases your balance due to $12,496.00."

On August 20, 2007, the IRS issued Bridgmon a notice of balance due for her 2005 year. A copy of the notice is not in the record.

On August 27, 2007, the IRS issued Bridgmon a statutory notice of balance due for her 2003 year. A copy of the notice is not in the record.

On August 27, 2007, the IRS also issued Bridgmon a statutory notice of balance due for her 2004 year. The notice stated that Bridgmon owed $19,470.29 as of September 17, 2007. The notice stated that

**[*7]**   We changed your 2004 account to correct your

- business income (or loss)

- Schedule E income (or loss)

- penalty charge

The notice does not explain how the $19,470.29 amount was calculated, other than

to set forth the following table:

| | |
|---|---:|
| Account balance before this change | None |
| Increase in tax because of this change | $12,148.00 |
| Additional late payment penalty since prior notice | 1,761.46 |
| Interest charged | 2,479.53 |
| Amount you now owe | [1]19,470.29 |

[1]We observe that the sum of the other entries in this column is only
$16,388.99.

On October 1, 2007, the IRS issued Bridgmon a notice of balance due for her

2003 year. The notice is not in the record.

On October 1, 2007, the IRS issued Bridgmon a notice of balance due for her

2004 year.  The notice is not in the record.

On November 17, 2008, the IRS issued Bridgmon separate statutory notices

of balance due for tax years 2003, 2004, and 2005.  These notices are not in the

record.

**[*8]** On November 17, 2008, the IRS also assessed failure-to-pay additions to tax of $1,026.81 for Bridgmon's 2003 tax year and $911.10 for Bridgmon's 2004 tax year.

On October 12, 2009, the IRS sent Bridgmon a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, proposing to levy to collect Bridgmon's 2003, 2004, and 2005 tax liabilities and giving her a right to a collection-review hearing. The Letter 1058 stated that the total amount due was $87,292.39. A table set forth the calculation of the amount.

| TYE Dec. 31 | Assessed balance | Accrued interest | Late-payment penalty | Total |
|---|---|---|---|---|
| 2003 | $40,485.63 | $5,285.84 | --- | $45,771.47 |
| 2004 | 20,381.39 | 2,626.54 | $364.44 | 23,372.37 |
| 2005 | 15,829.13 | 2,124.16 | 195.26 | 18,148.55 |
| Total amount due | | | | 87,292.39 |

On November 12, 2009, Bridgmon submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing. Bridgmon indicated the reasons for the hearing by checking the boxes "Installment Agreement" and "Offer in Compromise" and by writing the words "Wrong Amount" in the blank for other

[*9] reasons.  The Form 12153 was postdated November 16, 2009.  Bridgmon

attached the following letter to the Form 12153:

> I have repeatedly tried calling but cannot get thru the lines
>
> the amounts I have for the years
> 2004  12496[2]
> 2005  14364[3]
> 2003  23328[4]
>
> I realize these have interest
>
> I called in in 2007 right after I lost my son and dad.  My dads estate
> was being settled and said that I would pay in full when his house sold
> and was told the amount could be nego. at that time.  As of this date it
> is not sold due to the down turn in the market. I am still trying to sell it
>
> I had it rented for 4 months which paid the taxes for 2008 and then had
> to recover from the damages the tenant left and is sitting vacant as I
> cannot rent it and have dropped the price again and again.  I have as of
> Dec 1 2009 a tenant that will move in for $695 per month.  Much less
> than it is worth.
>
> I would be able to pay $500 per month on this from that rent, keeping
> the balance for taxes which are 2500 a year and 1200 for insurance.

---

[2]The August 7, 2007 letter from the IRS showed $12,496 as the balance due
for 2004.

[3]The July 16, 2007 statutory notice of balance due showed $14,364.68 as the
balance due for 2005.

[4]Bridgmon's Form 1040 for 2003 showed $23,268 as the amount she owed.
This may be the amount Bridgmon's letter meant to refer to.

**[*10]**  I have little, I can also cash in a cd that is really my sons and pay $5000 to
you if I cash that in

I have a business checking account, If you attach that I am out of
business and will have no way to have income at all as I have to pay
for utlties [sic] and get reimbursed from the banks after they are paid.
if I cannot pay up front I cannot keep my job.

I will continue trying to call but I have been on hold now for 2 hours
and two other times the same.

Please call me 813 478 3107

I do not agree to the 2003 of $40485[5] even with interest or the 2003
[she meant 2004] of 20381.[6]  they sound way too high based on what
I owed.,

Jean Bridgmon

Various documents were attached to the letter, including:  Bridgmon's Form 1040

for 2003; the August 7, 2007 letter from the IRS stating that Bridgmon's balance for

2004 was $12,496; the August 27, 2007 statutory notice of balance due for 2004

stating that Bridgmon owed $19,470.29; and the July 16, 2007 statutory notice of

balance due for 2005 stating that Bridgmon owed $14,364.68.

On November 20, 2009, an IRS employee whose identity was recorded as

"jacruz84" made a notation in the IRS files showing that Bridgmon had contacted

---

[5]The Letter 1058 showed $40,485.63 as the assessed balance for 2003.

[6]The Letter 1058 showed $20,381.39 as the assessed balance for 2004.

**[*11]** the ACS (apparently, the Automated Collection System) by telephone, that she had proposed making installment payments of $500 per month, and that she was told that an installment agreement could not be considered until she filed her 2006, 2007, and 2008 returns and submitted a Form 433-F, Collection Information Statement. According to the notes, Bridgmon promised to file the three returns by December 20, 2009. The notes indicate that three telephone numbers were on file for Bridgmon: "NEW HOME PHONE: (813)759-6685", "OLD BUSINESS PHONE: (813)759-6685", and "NEW CELL PHONE: (813) 478-3107".

On May 4, 2010, the Appeals Office sent a letter to Bridgmon stating that its Memphis Campus Appeals Office had received her case on April 27, 2010.

On May 6, 2010, the Appeals Office sent a letter to Bridgmon stating that it had scheduled a telephone call with her at 11 a.m. on June 16, 2010. The letter stated that Bridgmon should call the Appeals Office at the scheduled time and date, or, if the time and date was inconvenient, Bridgmon should contact the Appeals Office in 14 days. The letter stated that the Appeals Office could consider alternative collection methods only if Bridgmon (1) filed all federal tax returns required to be filed, and (2) completed a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and/or Form 433-B, Collection Information Statement for Businesses, within 14 days.

[*12] The letter stated that enclosed was "Form 433-B Collection Information Statement for Businesses". Bridgmon received the letter.

Bridgmon telephoned the Appeals Office at 11 a.m. on June 16, 2010, and numerous times later on. On June 16, 2010, the Appeals Office sent a letter to Bridgmon stating that she had not called at the scheduled time on June 16, 2010, and had not called beforehand to indicate that the time and date were not convenient. The letter stated: "If you would like to provide information for our consideration, please do so within 14 days from the date on this letter."

On October 6, 2010, the Appeals Office issued a notice of determination sustaining the proposed levy that stated:

> You submitted correspondence requesting a monthly payment of $500.00; however, you did not respond to two letters sent to you requesting that you submit financial information to establish your present ability to pay. These letters were sent to the address stated in your request for a CDP hearing. Because you have not responded, there is insufficient information to determine your proposal.

The notice of determination also stated: "On May 6, 2010, the Settlement Officer mailed you a letter scheduling a face-to-face, telephone, or correspondence conference for this case on June 16, 2010. You failed to respond. A second letter was mailed to you dated June 16, 2010. This letter allowed you 14 days to provide any information for us to consider. You did not respond." A section of the notice

[*13] of determination entitled "Challenges to the Existence or Amount of the Liability:" stated that (1) Bridgmon had attached correspondence to her Form 12153 questioning "the validity of the 2003 assessments", (2) that "the notice of deficiency" was issued on February 6, 2007,[7] and (3) that "[s]ince you did not cooperate with us after requesting the CDP hearing, we could not discuss this issue with you." Another section was titled "Collection Alternatives Offered by the Taxpayer:" and stated:

> On the Form 12153, you proposed an installment agreement.
>
> You did not submit Form 433-A, Collection Information Statement. I provided you with a copy of the Form 433-A by mail on May 6, 2010 and asked you to return by May 20, 2010.[8] You did not return the Form 433-A. Without this information we cannot make a determination on your financial status.

Bridgmon filed a timely petition with the Tax Court stating:

> I filed my own 2003, 2004 and 2005 taxes.
>
> I have tried to call the appointed person & left many unreturned calls.
>
> I was told I could not apply for 2003 2004 2005 payments until the future years were paid.
>
> See attached.

---

[7]The actual date was February 20, 2007.

[8]The May 6, 2010 letter stated that enclosed with the letter was a Form 433-B, not a Form 433-A.

**[*14]**  An attachment to the petition stated:

To Whom It may concern:

Re brief Background

I filed MY own taxes for 2003 and 2004 (of which you made corrections to it) so I do not see where you filed them for me.  and 2005 and the following years to current.

As stated in a letter of 2009 I would pay the 500 payment; I called in to talk to someone as per the financial information and was told that I would not be considered for any payment plan until all of my taxes for all years were filed, so I concentrated and [sic] getting that done (Which I have now done.)

That figure was based on the rent received from my fathers [sic] property.  I had tried to sell it before the market went bad which would have paid most of the debt now the property is worth 1/4 of what it was so that will not work and cannot sell it even though I have tried. The rental amount is also low.

I had received a letter about a phone interview for June 16 2010.  I have called and called and called and left messages for a call back with no one calling me back after two weeks of calling and not getting the person I gave up.

The number was 901 786 7570 Joyce Daniels.  I have left many messages for her.  and tried to call for the interview with no success.

I have sent forms to you about income and called with no one answering or responding.

At the time she filed her petition, Bridgmon lived in Florida.

**[\*15]**                                  Discussion

1.      Standard of Review

Section 6330(a)(1) prohibits the IRS from levying to collect tax liabilities until the IRS notifies the taxpayer of the taxpayer's right to a collection-review hearing with the Appeals Office.  At the collection-review hearing, the taxpayer may raise any relevant issue relating to the unpaid tax or the proposed levy, including challenges to the appropriateness of collection actions and "offers of collection alternatives, which may include \* \* \* an installment agreement".  Sec. 6330(c)(2)(A).  A taxpayer may contest the "existence or amount of the underlying tax liability" if the taxpayer did not receive a notice of deficiency for the tax liability in question or did not otherwise have an earlier opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B).  For these purposes, the underlying tax liability includes additions to tax and interest.  See Katz v. Commissioner, 115 T.C. 329, 339 (2000).  Following the hearing, the Appeals Office must make a determination that considers the issues raised by the taxpayer and other mandatory issues.  Sec. 6330(c)(3).  We have jurisdiction to review the Appeals Office's determination. Sec. 6330(d)(1).  As we explain below, the underlying tax liabilities are not at issue.  Therefore we review the Appeals Office's determination for abuse of

**[\*16]** discretion. <u>Sego v. Commissioner</u>, 114 T.C. 604, 609-610 (2000). Under this standard of review, a determination is erroneous if it is "arbitrary, capricious, or without sound basis in fact or law." <u>Giamelli v. Commissioner</u>, 129 T.C. 107, 111 (2007).

2.    <u>Analysis</u>

Bridgmon contends that the Appeals Office erred by failing to consider her challenges to the amounts of additions to tax. In her request for a collection-review hearing, Bridgmon questioned the amounts of the 2003 and 2004 additions to tax. Bridgmon is not entitled to challenge those amounts, however, because she received notices of deficiency for 2003 and 2004. <u>See</u> sec. 6330(c)(2)(B).

Bridgmon also contends that the Appeals Office erred in failing to consider her proposal to make installment payments of $500 per month. The IRS responds that the Appeals Office could not consider the installment-agreement proposal because Bridgmon had failed to submit a collection-information statement to the Appeals Office. In addition, the IRS contends that Bridgmon failed to call the Appeals Office on June 16, 2010, at the scheduled time.

We believe that Bridgmon did call the Appeals Office at that time. Bridgmon testified that she called the Appeals Office at this time and several other times. Bridgmon was a credible witness. Although the records of the Appeals

[*17] Office do not reflect that it received a telephone call from Bridgmon at the scheduled time, and although the Appeals Office wrote a letter on the scheduled day stating that she had not called at the scheduled time, we believe Bridgmon. We find as a matter of fact that Bridgmon called the Appeals Office at the scheduled time and at numerous other times. The IRS asserts that the Appeals Office may have called Bridgmon. As support for this proposition, the IRS points to the following note made by the Appeals Office in its files on May 5, 2010: "ACS history--made several telephone attempts--no response." We believe this is a reference to a record entitled "Referral Request for CDP Hearing from ACS Support". This record indicates that on May 20, 2010, "ACS Support" referred Bridgmon's "case file" to the Appeals Office and made the following notes on the record: on February 10, 2010, "LEFT MESSAGE FOR TAXPAYER.", on February 18, 2010, "NO RESPONSE FROM TAXPAYER, SECOND MESSAGE LEFT.", and on April 9, 2010, "NO RESPONSE FROM TAXPAYER." These notes refer to telephone calls made by IRS employees other than those working in the Appeals Office. We find that the Appeals Office did not telephone Bridgmon.

The significance of the telephone call that was scheduled for June 16, 2010, was described in the May 6, 2010 letter of the Appeals Office to Bridgmon. The letter advised her: "This call will be your primary opportunity to discuss with me

**[\*18]** [the Appeals Officer] the reasons you disagree with the collection action and/or to discuss alternatives to the collection action." The telephone call was important. It would have been an opportunity for Bridgmon to ask about the Appeals Office's requests for financial statements, which may have been confusing to Bridgmon. Bridgmon may not have known, for example, whether the Appeals Office wanted her to submit a Form 433-A, a Form 433-B, a Form 433-F, or all three forms. The fact that Bridgmon did not submit any of these forms leads the IRS to argue that it was not an abuse of discretion for the Appeals Office to reject collection alternatives. The courts have recognized that the Appeals Office needs financial information in order to evaluate collection alternatives such as installment agreements and offers-in-compromise. Thus, it has not been held it not to be an abuse of discretion for the Appeals Office to decline to consider collection alternatives when (1) the taxpayer had refused to contact the Appeals Office for the hearing and had failed to submit the financial information requested by the Appeals Office, see Yoel v. Commissioner, T.C. Memo. 2012-222, at \*3, \*8; Picchiottino v. Commissioner, T.C. Memo. 2004-231, slip op. at 13, or (2) the taxpayer had participated in a hearing with the Appeals Office and had failed to submit the financial information requested by the Appeals Office. See Long v. Commissioner, T.C. Memo. 2010-7, slip op. at 4. Bridgmon, however, falls into

**[*19]** neither of these two categories.  She attempted to participate in the telephone hearing, but her attempt was unsuccessful.

We hold that the Appeals Office's failure to do more to contact Bridgmon was an abuse of discretion.  We will remand the case to the Appeals Office to hold a hearing.  At the hearing on remand, the Appeals Office will not be required to consider any challenges by Bridgmon to the underlying tax liabilities, such as additions to tax.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.