T.C. Memo. 2014-116

UNITED STATES TAX COURT

JOSE L. URIBE AND MARIA E. URIBE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13337-12L.                    Filed June 11, 2014.

<u>Mitchell Stuart Fuerst</u>, <u>Joseph A. DiRuzzo, III</u>, <u>Jennifer Correa Riera</u>, and

<u>Sanpreet K. Dhaliwal</u>, for petitioners.

<u>Derek P. Richman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, <u>Judge</u>:  The sole issue before the Court is whether respondent

abused his discretion in sustaining the notice of Federal tax lien (NFTL) filing

[*2] under section 6320[1] and proposed levy under section 6330. We hold that he did not abuse his discretion in denying withdrawal of the lien but did abuse his discretion in denying collection alternatives.

FINDINGS OF FACT

The Uribes filed Form 1040, U.S. Individual Income Tax Return, for themselves and Form 1120S, U.S. Income Tax Return for an S Corporation, for their business, Lacuna Hair Salon & Spa, Inc.,[2] for the 2007 taxable year. Subsequently, respondent opened an examination of the returns, and at the end of the examination the Uribes signed a Form 4549, Income Tax Examination Changes. The Uribes later requested audit reconsideration.

On September 26, 2011, respondent mailed the Uribes a Notice of Intent to Levy and Notice of Your Right to a Hearing. The levy notice informed the Uribes that respondent intended to collect their 2007 liability through levy. About two weeks later respondent mailed the Uribes a Notice of Federal Tax Lien Filing and

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The Uribes' S corporation has since been renamed New Creative Concept, Inc.

[*3] Your Right to a Hearing Under IRC 6320. The liabilities covered by the notices totaled over $120,000.

The Uribes timely filed Form 12153, Request for a Collection Due Process or Equivalent Hearing, in response to the lien and levy notices. The Form 12153 requested lien withdrawal, but the Uribes did not check a box requesting a collection alternative. The Uribes attached a letter stating that they wanted to enter into an installment agreement after the audit reconsideration process concluded.

On March 22, 2012, the settlement officer mailed the Uribes a letter scheduling a telephone hearing. In early April 2012 the settlement officer held the telephone hearing with the Uribes' attorney, Mr. Fuerst. The settlement officer told Mr. Fuerst that the Uribes were precluded from raising the underlying liability. Mr. Fuerst testified at trial that he told the settlement officer that the Uribes faced a hardship because of the economic downturn and that they were interested in a collection alternative.[3] Mr. Fuerst proposed two options for

---

[3]At trial respondent objected to Mr. Fuerst's testimony because he is among the counsel of record in this case. However, because he was participating only as a witness during trial, the Court overruled this objection. Next, respondent objected because he had not been informed within the time required by the Court's Standing Pretrial Order that the Uribes were planning to call Mr. Fuerst to testify. The Court reserved ruling on the objection. We will allow the testimony because

(continued...)

**[*4]** resolving the collection issues: a collection alternative based on what the Uribes expected their liability to be after audit reconsideration or a short-term agreement as to the currently assessed liability so that the agreement would be revised after audit reconsideration. Throughout the process Mr. Fuerst believed that the liability would be adjusted, and all collection alternatives that he proposed on behalf of the Uribes were predicated on audit reconsideration.

At no time during the collection hearing process did the settlement officer or any other Internal Revenue Service employee ask the Uribes to provide financial information or to complete a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

Respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and 6330 on April 24, 2012, sustaining the NFTL and the proposed levy. The Uribes, while residing in Florida, timely petitioned.

OPINION

The Secretary must notify a taxpayer in writing of his or her right to request a hearing upon the filing of a notice of lien or before the Secretary can levy against

---

[3](...continued)
we do not find that respondent was prejudiced; the testimony does not conflict with any material facts as stated in the administrative record.

[*5] any property or right to property.[4] The hearings are often called collection

due process, or CDP, hearings. In a CDP hearing a taxpayer may raise any issue

relevant to an unpaid tax or collection action, including appropriate spousal

defenses, challenges to the appropriateness of collection actions, and offers of

collection alternatives.[5] In addition, a taxpayer may challenge the existence or

amount of the underlying tax liability if the taxpayer did not receive a statutory

notice of deficiency or did not otherwise have the opportunity to dispute the

liability.[6] While the term "underlying liability" is not defined in section 6320 or

6330, we have previously interpreted this term "to include any amounts owed by a

taxpayer pursuant to the tax laws."[7] For purposes of section 6330(c)(2)(B), a

taxpayer who signed Form 4549 is deemed to have had the opportunity to dispute

the underlying liability.[8]

---

[4]Secs. 6320(a), 6330(a)(1).

[5]Secs. 6330(c)(2)(A), 6320(c).

[6]Sec. 6330(c)(2)(B).

[7]Katz v. Commissioner, 115 T.C. 329, 339 (2000).

[8]Aguirre v. Commissioner, 117 T.C. 324, 327 (2001); Gilmer v. Commissioner, T.C. Memo. 2009-296.

**[\*6]** If the validity of the underlying liability is properly at issue, we will review that determination de novo.[9] In contrast, where the validity of the underlying liability is not properly at issue, we will review the determination for abuse of discretion.[10] An abuse of discretion will be found where the determination was arbitrary, capricious, or without sound basis in fact or law.[11]

The determination by the Appeals officer must take into consideration: (1) the verification that the requirements of applicable law and administrative procedure have been met; (2) relevant issues raised by the taxpayer; and (3) whether any proposed collection action balances the need for efficient collection with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.[12]

Because the Uribes signed a Form 4549 agreeing to the underlying liability, they were precluded from raising their underlying liability during the CDP

---

[9]Sego v. Commissioner, 114 T.C. 604, 609-610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

[10]Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.

[11]Giamelli v. Commissioner, 129 T.C. 107, 111 (2007).

[12]Sec. 6330(c)(3).

**[\*7]** hearing.[13]  Accordingly, we review respondent's determinations for abuse of discretion.

I.  <u>Withdrawal of Notice of Federal Tax Lien</u>

Upon demand for payment and failure to pay, the Federal Government obtains a lien against "all property and rights to property, whether real or personal" of any person liable for Federal tax.[14]  After obtaining the lien, the Secretary may file a notice of the lien to obtain priority over other creditors.[15]  The Secretary may withdraw a notice of lien if certain circumstances are present, such as the filing of the notice was premature; the taxpayer entered into an agreement to satisfy the liability; withdrawal would facilitate collection; or with the consent of the taxpayer or the National Taxpayer Advocate, withdrawal would be in the best interests of the taxpayer and the United States.[16]

The statute allowing withdrawal of a notice of lien is permissive.  The Uribes presented no evidence to show why the notice of lien should be withdrawn

---

[13]<u>Aguirre v. Commissioner</u>, 117 T.C. at 327; <u>Gilmer v. Commissioner</u>, T.C. Memo. 2009-296.

[14]Sec. 6321.

[15]Sec. 6323(a).

[16]Sec. 6323(j).

**[\*8]** other than Mr. Fuerst's vague statements about hardship. Accordingly, we find that the settlement officer did not abuse her discretion in not withdrawing the NFTL.

## II. Denial of Collection Alternative

Mr. Fuerst approached the CDP hearing from the perspective that the Uribes' underlying liability would be adjusted, and he offered collection alternatives predicated only on the result of the audit reconsideration that he anticipated. However, while his focus may have been misplaced, the settlement officer could not properly evaluate whether the Uribes qualified for a collection alternative because she did not ask them to provide any financial information.

The regulations provide that "[t]axpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing."[17] We have also consistently held that a settlement officer does not abuse his discretion in denying a collection alternative when the taxpayer did not provide the requested financial

---

[17]Sec. 301.6320-1(e)(1), Proced. & Admin. Regs. (emphasis added); sec. 301.6330-1(e)(1), Proced. & Admin. Regs. (emphasis added).

[*9] information.[18]  This illustrates the importance of knowing the taxpayer's ability to pay when evaluating whether he is eligible for a collection alternative.

Neither the settlement officer nor any IRS employee asked for the Uribes' financial information.  Regardless of the final amount of the liability, it is impossible for the settlement officer to evaluate the Uribes' ability to pay without knowing their financial information.  By not requesting this pivotal information, the settlement officer could base her determination only on the information Mr. Fuerst provided in his request for an installment agreement and not on what should have been considered, which was the Uribes' eligibility for an installment agreement based on their ability to pay.

We have the discretion to remand a case to the Office of Appeals for consideration of a matter that was not properly considered.[19]  We exercise that discretion here and remand the case in order for the Uribes' financial information to be considered as part of their request for a collection alternative.

---

[18]See Mayhugh v. Commissioner, T.C. Memo. 2014-98; Klingenberg v. Commissioner, T.C. Memo. 2011-247, aff'd, 551 Fed. Appx. 354 (9th Cir. 2014); Schwersensky v. Commissioner, T.C. Memo. 2006-178;

[19]See Hoyle v. Commissioner, 131 T.C. 197 (2008); Med. Practice Solutions, LLC v. Commissioner, T.C. Memo. 2009-214.

**[*10]** III.  <u>Conclusion</u>

We find that respondent did not abuse his discretion in declining to withdraw the NFTL.  However, we will order a remand on the issue of collection alternatives because we find that respondent did not appropriately evaluate the Uribes' request for an installment agreement.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.