T.C. Memo. 2020-140

UNITED STATES TAX COURT

FRANCIS I. SPAGNOLETTI, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10204-19L.                          Filed October 8, 2020.

Francis I. Spagnoletti, pro se.

<u>William J. Gregg</u> and <u>Bartholomew Cirenza</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to section 6330(d)(1)[1] of a determination by the Internal

_____

[1]All statutory references are to the Internal Revenue Code (Code) in effect at
all relevant times, and all Rule references are to the Tax Court Rules of Practice
and Procedure.  We round all monetary amounts to the nearest dollar.

**[*2]** Revenue Service (IRS or respondent) to uphold a notice of intent to levy. Respondent has moved for summary judgment, contending that the settlement officer (SO) did not abuse her discretion in sustaining the proposed levy. We agree and will therefore grant the motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached declarations and exhibits. See Rule 121(b). Petitioner resided in Texas when he petitioned this Court.

Petitioner, an attorney, filed delinquent Federal income tax returns for 2015 and 2016 and did not pay the full amount of tax shown as due on either return. The IRS assessed the tax shown as due plus additions to tax for failure to timely file, failure to timely pay, and failure to pay estimated tax. See secs. 6651(a)(1) and (2), 6654. As of May 2018, petitioner's outstanding liabilities for the two years (including interest) exceeded $1.2 million.

On May 25, 2018, in an effort to collect these unpaid liabilities, the IRS sent petitioner a Notice of Intent to Levy and Notice of Your Rights to a Hearing (levy notice). Petitioner timely requested a CDP hearing, indicating that he was interested in an installment agreement (IA). He stated that he had previously contacted

**[*3]** the IRS to request an IA to pay his 2015 and 2016 liabilities but had not received a call back. He raised no other issues in his hearing request.

The case was assigned to an SO in the IRS Appeals Office in Houston, Texas. The SO reviewed the administrative file and confirmed that petitioner's 2015 and 2016 liabilities had been properly assessed and that all other legal requirements had been met. The SO noted that petitioner had made no estimated tax payments for 2017 or 2018.

On August 28, 2018, the SO sent petitioner a letter scheduling a telephone conference for October 25, 2018. The letter informed petitioner that, in order for the SO to consider an IA, petitioner needed to (1) submit Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and (2) provide proof that he had made all required estimated tax payments. The SO asked petitioner to submit these documents within two weeks, but he submitted nothing by that deadline or subsequently.

The SO called petitioner for the scheduled conference on October 25, 2018, but he was unavailable. When petitioner did not return the call or otherwise contact her, the SO sent him a "last chance" letter. In that letter she noted that he had missed the conference and invited him to send her by November 9, 2018, any information that he wished her to consider.

**[*4]**   On November 8 petitioner faxed the SO a letter stating that he wished to pay his entire outstanding balance in four monthly installments starting at the end of that month.  He explained:  "I realize that you normally request additional documentation to do an installment agreement * * * ; however, I am not requesting an installment agreement but rather full payment in 120 days."  The SO reviewed his account and noted that he had failed to pay his tax for 2017 as well, so that his aggregate liability approached $1.9 million as of November 26, 2018.

In a subsequent phone call petitioner reiterated his proposal to pay his balance in four monthly installments.  The SO explained that he was ineligible for an IA because he had submitted no financial information and was not in compliance with his estimated tax obligations.  She stated that she would close the case but noted that, if petitioner paid his balance within 120 days as he proposed, his account would likely be fully paid before any levy actually occurred.

The SO never received from petitioner a Form 433-A or proof that he had paid estimated tax.  And he made no payments toward his balance due.  On May 8, 2019--more than five weeks after his proposed 120-day payment plan would have been completed--the IRS issued him a notice of determination sustaining the proposed levy.

**[*5]** Petitioner timely petitioned this Court for review. On February 13, 2020, respondent filed a motion for summary judgment, to which petitioner replied.

Discussion

A.    Summary Judgment Standard and Standard of Review

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b) we may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Ibid. The nonmoving party may not rest upon the mere allegations or denials in his pleadings, but must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity of the taxpayer's underlying liability is properly at issue, we review

**[\*6]** the SO's determination of that issue de novo. Sego v. Commissioner, 114

T.C. 604, 610 (2000). Where there is no dispute as to the taxpayer's underlying

liability we review the IRS decision for abuse of discretion. Jones v.

Commissioner, 338 F.3d 463, 466 (5th Cir. 2003); Goza v. Commissioner, 114

T.C. 176, 182 (2000). Abuse of discretion exists when a determination is

arbitrary, capricious, or without sound basis in fact or law. See Murphy v.

Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

B.     Underlying Liabilities

Because the IRS did not issue petitioner a notice of deficiency for 2015 or

2016, he was permitted to challenge at the CDP hearing the existence or amount of

his underlying tax liability for each year. See sec. 6330(c)(2)(B); Montgomery v.

Commissioner, 122 T.C. 1, 8-9 (2004). The phrase "underlying tax liability" in-

cludes the tax due, any additions to tax or penalties, and statutory interest. Katz v.

Commissioner, 115 T.C. 329, 338-341 (2000). However, "we do not have author-

ity to consider * * * [underlying liability] issues that were not raised before the

Appeals Office." Giamelli v. Commissioner, 129 T.C. 107, 115 (2007). More-

over, a taxpayer must properly raise an issue during the CDP hearing in order to

preserve it for this Court's review. "The merits are not properly raised if the tax-

payer challenges the underlying tax liability but fails to present the Appeals Office

[*7] with any evidence regarding that liability after being given a reasonable opportunity to do so." Gentile v. Commissioner, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75, 76, aff'd, 592 F. App'x 824 (11th Cir. 2014); see also sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

Petitioner admits that he "did not raise an issue as to the reported tax due * * * for 2015 and 2016." But he asserts that he did dispute his liability for additions to tax and interest. He qualifies this assertion, however, by saying that he advanced such a challenge "to the best of his recollection."

The record of the CDP hearing includes no evidence that petitioner challenged his liability for the additions to tax or sought abatement of interest. Neither his Form 12153 nor the letter appended to it mentions additions to tax or interest; both focus exclusively on his desire for a "120-day installment agreement." His November 8, 2018, letter to the SO stated that he wished to make "full payment in 120 days." This statement conflicts with the notion that he was challenging his liability for interest and additions to tax, which totaled $161,435 when the levy notice was issued.

The SO's case activity record contains no reference to any challenge by petitioner to his liabilities for interest or additions to tax. Her summary of the November 13, 2018, telephone call describes petitioner's position as being that "he

**[*8]** just need[s] the 120 days and he will full pay what he owes." The notice of determination states that the underlying liabilities were "not raised as an issue for the period(s) being considered in this hearing." And in his petition to this Court petitioner advanced no challenge to any portion of his underlying liability for 2015 or 2016.

In the light of this record evidence, petitioner's assertion that he raised his liabilities for additions to tax and interest "to the best of his recollection" is not sufficient to create a genuine issue of material fact. Petitioner appears to contend that he made this point inferentially by complaining that the IRS caused delay by not returning his initial phone calls inquiring about a payment plan. That complaint was not sufficient to raise a cognizable challenge to his underlying tax liabilities.

In any event, even if petitioner were thought to have challenged his liabilities for interest or additions to tax, he clearly did not present (and does not contend that he presented) any evidence regarding those liabilities during the CDP hearing. See Gentile, 106 T.C.M. (CCH) at 76. The Code specifies the evidence a taxpayer must supply to qualify for abatement of interest and to defeat the additions to tax for late filing and late payment. See sec. 6404(e)(1)(A) (requiring proof that a deficiency was "attributable in whole or in part to any unreasonable error or delay

[*9] by an [IRS] officer or employee * * * (acting in his official capacity) in performing a ministerial or managerial act"); sec. 6651(a)(1) and (2) (requiring a showing that the taxpayer's failure was "due to reasonable cause and not due to willful neglect"). Petitioner submitted no evidence to the SO on these points, and he therefore failed to mount a proper challenge to his underlying liabilities at the CDP hearing. That being so, he cannot maintain that challenge here. See Giamelli, 129 T.C. at 115; Gentile, 106 T.C.M. (CCH) at 76.

C.    Abuse of Discretion

In deciding whether the SO abused her discretion in sustaining the collection action, we consider whether she: (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3). Our review of the record establishes that the SO properly discharged all of her responsibilities under section 6330(c).

Petitioner contends that the IRS erred in issuing the levy notice without first issuing a notice of deficiency. The IRS was not required to issue a notice of deficiency for 2015 or 2016 because it assessed the tax that petitioner himself had

[*10] shown as due on his returns. See sec. 6211(a) (defining "deficiency" to exclude tax reported on a return).

Petitioner next contends that the levy notice improperly combined two tax years and that he was entitled to a separate hearing for each year. He cites no authority for either proposition, and both are false. The IRS routinely includes multiple tax years in a single notice of levy. And while taxpayers are limited to one CDP hearing per tax period, see sec. 6330(b)(2), there is no impediment to addressing multiple tax periods in one CDP proceeding, see, e.g., Cosio v. Commissioner, T.C. Memo. 2020-90; Nimmo v. Commissioner, T.C. Memo. 2020-72; Kirkley v. Commissioner, T.C. Memo. 2020-57.

Finally, petitioner contends that the SO should have accepted his request to pay his tax liabilities in four monthly installments. We have consistently held that an SO does not abuse her discretion when she declines to consider a collection alternative for a taxpayer, like petitioner, who has failed to make required estimated tax payments. See Giamelli, 129 T.C. at 111-112. "Compliance with filing * * * [and] paying estimated taxes * * * must be current from the date the installment agreement begins." Internal Revenue Manual pt. 5.14.1.4.2(19) (July 16, 2018). Likewise, it is not an abuse of discretion for an SO to reject collection alternatives where the taxpayer has declined, as petitioner did, to supply the requisite financial

**[*11]** information.  See, e.g., <u>Solny v. Commissioner</u>, T.C. Memo. 2018-71, at *10; <u>Gentile</u>, 106 T.C.M. (CCH) at 77.  In any event the SO effectively did allow petitioner 120 days to make full payment by waiting almost six months before closing the case and issuing the notice of determination.

Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and sustain the proposed collection action.  Petitioner asserts that he has now paid his 2017 tax liability and is willing to pay his liabilities for 2015 and 2016.  He is free to do so at any time.  And if his financial circumstances have changed for the worse, he is free to submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative supported by the necessary financial information.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered for respondent.</u>